Kerry Lynn **FARE**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 09–98–122 CR.

Court of Appeals of Texas, Beaumont.

Submitted Sept. 16, 1999.

Decided Oct. 20, 1999.

Rehearing Overruled Dec. 2, 1999.

Christine Brown, Orange, for appellant.

John Kimbrough, County Atty., Troy Johnson, Asst. County Atty., Orange, for State.

Before WALKER, C.J., BURGESS and STOVER, JJ.

## OPINION

RONALD L. WALKER, Chief Justice.

Appellant was convicted by a jury for having committed the state jail felony offense of Burglary of a Building. *See* Tex. Pen.Code Ann. § 30.02 (Vernon 1994). Appellant elected to have the trial court as-

sess punishment. Appellant was sentenced to confinement in the State Jail Facility for a term of two years, and assessed a fine of $5,000. The trial court suspended the imposition of appellant's confinement and placed her on community supervision for a period of five years. Appellant brings forth two issues for our consideration, *viz:*

> Point 1: The evidence was insufficient to support the conviction.
>
> Point 2: The appellant was wrongly convicted on the uncorroborated testimony of alleged co-conspirators.

The record before us reflects that appellant was tried jointly with co-defendant, Trish Sestric.[1] Appellant and Sestric had been indicted separately for the burglary of the Child Protective Services (CPS) offices located in Orange County, Texas. The offense date was alleged as on or about May 29, 1995. The basic facts are uncontested. The testimony reflected that on the date alleged, someone entered the Orange County CPS offices and removed a large number of word processors, monitors, printers, and other items of office equipment. While the authorities had no suspects initially, a significant circumstance of the burglary was the fact that the building had not been forcibly entered. The assumption at that point was that persons unknown had entered the building by using a key.

The break in the case came in early November of 1995, when co-defendant Sestric's son, Matt Reck, informed the authorities that he participated in the burglary and subsequent secreting of the stolen property. Reck was granted immunity by the Orange County authorities for providing information on the burglary. Reck gave a statement and provided the authorities with an address to a house in Beaumont, Texas, where a large number of word processing equipment was recovered. One particular item, a "tripod box," had the letters "C.P.S." written on it. The

---

1. See our opinion in Sestric's appeal, *Sestric v. State*, 1 S.W.3d 921 (Tex.App.—Beaumont 1999, no pet. h.).

owner of the house, David Barrera, cooperated with the authorities and allowed them full access to his house and garage. By the time the instant cases against appellant and Sestric went to trial, however, Barrera had died so that any testimony he may have been able to provide was lost.

Included in the information the authorities received from Matt Reck was that of the names of John Hall, Sestric, and appellant. At the time of the burglary, Hall was employed with Orange County CPS and appellant was a former employee. The authorities eventually tracked down Hall and he also gave them a statement admitting to participation in the burglary along with Matt Reck, Sestric, and appellant.

At trial, the State called both Matt Reck and John Hall to testify against Sestric and appellant. The State also called CPS employees Anna Bento and Gail Schlabs, Detective Lynn Thomas Arceneaux of the Orange Police Department, Detective Green D. Moree of the Beaumont Police Department, and Patricia John who was a former house-mate with John Hall. It was through John Hall that Ms. John became acquainted with Trish Sestric and appellant. Other than John Hall and Matt Reck, only two of the State's witnesses had any encounters with either Sestric or appellant following the burglary. Those witnesses were Ms. John and Detective Moree. We will discuss the significance of the encounter with Ms. John subsequently.

The case for the defense consisted of a single witness, Earl Eric Bennett. Bennett was a long-time friend of appellant and Sestric, and testified that on Memorial Day weekend of 1995, the week-end the burglary occurred, appellant, Sestric and Bennett were at appellant's house watching war movies. Bennett further testified that neither appellant nor Sestric was gone from the house for any appreciable length of time and they could not have sneaked out because appellant's and Hall's dogs would have made so much noise that Bennett would have been alerted to their comings and goings.

As alluded to above, appellant makes a general legal sufficiency complaint and a more specific complaint that the co-conspirators' testimony was not sufficiently corroborated with other evidence so that said testimony may be included in any legal sufficiency analysis. TEX.CODE CRIM. PROC. ANN. art. 38.14 (Vernon 1979) provides that a conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense. The rationale behind the rule has been explained thusly:

> An accomplice witness is a discredited witness because her or his testimony alone cannot furnish the basis for the conviction. No matter how complete a case may be made out by an accomplice witness or witnesses, a conviction is not permitted unless he or they are corroborated.

*Walker v. State*, 615 S.W.2d 728, 731 (Tex. Crim.App.1981) (citations omitted).

The accomplice witness rule is a statutorily imposed sufficiency review and is not derived from federal or state constitutional principles that define the legal and factual sufficiency standards. *See Cathey v. State*, 992 S.W.2d 460, 462–63 (Tex. Crim.App.1999), *cert. filed.* Nevertheless, the remedy for an appellate finding of insufficient evidence to corroborate accomplice testimony is acquittal since TEX.CODE CRIM. PROC. ANN. art. 38.17 (Vernon 1979) states: "In all cases where, by law, two witnesses, or one with corroborating circumstances, are required to authorize a conviction, if the requirement be not fulfilled, the court shall instruct the jury to render a verdict of acquittal, and they are bound by the instruction."

We will discuss appellant's second issue first. In order to determine whether the accomplice witnesses' testimo-

ny is corroborated we eliminate all accomplice evidence from the record and determine whether the other inculpatory facts and circumstances in evidence tend to connect the accused to the offense. *See Hernandez v. State*, 939 S.W.2d 173, 176 (Tex. Crim.App.1997); *Munoz v. State*, 853 S.W.2d 558, 559 (Tex.Crim.App.1993). The non-accomplice evidence need not be sufficient in itself to establish the accused's guilt beyond a reasonable doubt. *Hernandez*, 939 S.W.2d at 176. Nor is it necessary for the non-accomplice evidence to directly link the accused to the commission of the offense. *Id.* The rule is satisfied if there is *some* non-accomplice evidence which *tends* to connect the accused to the commission of the offense alleged in the indictment. *Id.*

■ In the instant case, the State's brief sets out seven non-accomplice evidentiary situations it contends are contained in the record. These are listed as follows:

1. Appellant, John Hall, and Trish Sestric had discussed burglarizing the CPS office and stealing computers before they committed the burglary;

2. Appellant, Hall, and Sestric admitted to the burglary afterwards and admitted that they stole computers from the office;

3. Appellant was in the possession of computers similar to the stolen CPS computers only two months after the burglary;

4. Appellant considered the visit and interrogation by Detective Moree in July 1995 to be a "close call" which prompted her to remove most of the computers to another location— Barrera's garage;

5. Appellant was very interested in computers and wanted someday to sell computers;

6. Appellant was upset enough about her firing to initiate a grievance against CPS; and

7. Earl Bennett's alibi testimony was suspect enough to have created the op-

portunity for Appellant and Sestric to commit the burglary.

A careful reading of the record before us does not produce such solid corroborative evidence as the State would have us believe. With regard to any discussions or admissions concerning the burglary by either appellant or Sestric, the lone non-accomplice source comes from the testimony of Patricia John. We set out below the pertinent portions of Ms. John's testimony as it relates to any discussions or admissions on the part of appellant or Sestric:

Q. [State's Attorney] Sometime around May of '95 did you ever loan John [Hall] a van?

A. [Ms. John] Yes, I did.

Q. What were the circumstances behind that?

A. He asked to borrow my van.

Q. Did you have any idea what he was going to do with it?

A. I really wasn't for sure.

Q. Do you remember him telling you anything about what he was going to do with it?

A. There had been talk about them going to C.P.S. in Orange and taking a bunch of computers, but I really didn't think at the time that John was serious.

Q. And when you say John and them, who are you talking about?

A. Trish and Kerry.

. . . .

Q. Why didn't you take this seriously? I mean, who mentioned this to you?

A. I'm not for sure. I know that John and I had talked about it once at the house on McFaddin but John was working for C.P.S. at the time and I thought, you know, he wouldn't jeopardize his job and his life like that.

Q. Did you— or were you aware of any problems he was having with C.P.S. at that time?

A. No, I wasn't.

Q. Did you loan him the van?

A. Yes, I did.

Q. And did he bring it back?

A. Yes, he did.

Q. When did you find out that what they were talking about was something serious, was something that they weren't joking about, that they did?

A. I don't— can't actually say, you know, what day; but it wasn't long afterwards.

Q. Was there talk about giving something to you?

A. Yes, there was.

Q. What was that?

A. A computer.

. . . .

Q. Who brought this up about giving you a computer?

A. They did.

Q. Was it afterwards, or was it before? Before you lent them the van or after you had loaned John the van?

A. I don't— I don't remember.

Q. Were you given a computer?

A. Yes, I was.

Q. All right. Who gave that to you?

A. Well, it actually came from Kerry.

Q. Where did you get it at, do you remember?

A. Well, she showed it to me at her house one afternoon and told me she was having problems getting it booted right but that this was going to be computer for the boys [Ms. John's sons].

Q. Are you much into computers?

A. No. I work on a computer some at work, and I'm always afraid I'm going to tear it up.

Q. Did you know what she meant about booting it up, can't boot it up?

A. No.

Q. What did the computer look like?

A. A computer. You know, I don't know how to describe a computer.

Q. That was a bad question. Let me just see if I can put it this way: Did it look like a new computer, or did it look like an old computer?

A. It looked like an old computer.

Q. Did you have any questions about that computer? Were you a little— did you have some suspicions about where that computer might have come from?

A. Well, I did ask; and they said it came from somebody out west, El Paso or something, that it wasn't one of the computers they had taken.

Q. And who told you that?

A. Kerry.

Q. And when they said computers that they had taken, did you assume the computers they had taken from the C.P.S. office?

A. Yes, sir.

Q. Did they ever deny taking those computers?

A. No, sir.

. . . .

Q. Where were you at their house when they were showing you this computer?

A. In the front room. When you walk in the door, there was a room right there.

Q. Was it downstairs?

A. Yes.

Q. And did you see any other computers besides that computer that was going to go to you?

A. Not that I could recall because it was a dark room.

The following response was further elicited from Ms. John on cross-examination:

Q.[Sestric's Trial Counsel] You said when you testified that you didn't really know what your van was being used for?

A.[Ms. John] No, sir.

Q. What did you think your van was being used for?

A. I just thought, you know, because everybody had small vehicles and I had a large vehicle and a lot of times— you know, like, now I have a Geo Metro and you can only put four people in it at a time and I occasionally I borrow my

girlfriend's van when there is a bunch of us going to the movies or whatever.

Q. But the one who actually borrowed the van from you was John; is that correct?

A. Yes, sir. Yes, sir.

Taken in its proper context, the testimony of Ms. John does not support the State's claim that appellant and Sestric discussed burglarizing the CPS office prior to committing the offense. What Ms. John testifies to is that she and John Hall discussed the possibility that Hall, Sestric, and appellant would commit the burglary. By her own admission, Ms. John did not know either appellant or Sestric very well, and the only time she would see either woman was when Ms. John was with Hall. The State, however, is correct, at least with regard to appellant, in its contention that she admitted to having committed the burglary to Ms. John. Recall that when Ms. John asked if the computer she was getting was stolen it was appellant who responded that the computer "wasn't one of the computers they had taken." Such admissions have been held to be sufficient corroboration to support accomplice testimony. *See Farris v. State,* 819 S.W.2d 490, 495 (Tex.Crim.App.1990), *overruled on other grounds by Riley v. State,* 889 S.W.2d 290 (Tex.Crim.App.1994) (op. on reh'g.); *Horton v. State,* 986 S.W.2d 297, 300 (Tex.App.—Waco 1999, no pet.). We need look no further for sufficient corroborative evidence as to appellant, Kerry Fare. Appellant's second appellate issue is overruled.

Having found sufficient non-accomplice corroborative evidence connecting appellant to the burglary, we now may consider the testimony of her accomplices in addressing her first appellate issue concerning the lack of legally sufficient evidence to sustain her conviction. In the record before us, the testimony of the two accomplice witnesses, Matt Reck and John Hall, was more than sufficient to prove appellant's guilt as to each element of the offense of burglary of a building beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Santellan v. State,* 939 S.W.2d 155, 160 (Tex.Crim.App.1997). Appellant's first appellate issue is overruled. The judgment and the sentence of the trial court are affirmed.

AFFIRMED.