**Jackie Glynn SIMMONS, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–03–446–CR.**

Court of Appeals of Texas,
Fort Worth.

Sept. 21, 2006.

**68**

Dawn A. Moore, Boswell & Moore, P.C., Denton, for Appellant.

Bruce Isaacks, Crim. Dist. Atty., Kathleen Walsh, Erin B. Healey, Roger Jones, Kristin Kidd and Amanda Parker, Asst. Dist. Atty's for Denton County Denton, Matthew Paul, State Prosecuting Atty. Austin, for Appellee.

PANEL F: CAYCE, C.J.; GARDNER and McCOY, JJ.

## OPINION

ANNE GARDNER, Justice.

Appellant Jackie Glynn Simmons appeals from his conviction for possession of a controlled substance with intent to deliver. In four points, Appellant contends that the evidence was insufficient to corroborate the testimony of a covert witness, that the evidence was legally insufficient to support Appellant's conviction when the uncorroborated testimony of the covert witness is excluded from consideration, and that the trial court's failure to instruct the jury on the requirement of corroboration was reversible error. We reverse and remand.

### Background

Narcotics Detective Jeffrey Davis of the Denton Police Department testified that on February 11, 2003, he executed a search warrant at the residence of Paul Baccus in Lewisville, Denton County, Texas. Inside the residence, officers located a controlled substance and arrested Baccus. Baccus asked Detective Davis if there was anything he could do to avoid going to jail. At Detective Davis's request, Baccus agreed to contact a source of his, whom he identified as Appellant. The ultimate agreement required Baccus "to complete six case credits" in order to get his case dismissed.

Detective Davis testified that, in his presence, Baccus telephoned Appellant and set up a meeting to have Appellant deliver a quarter of a kilogram of cocaine to Baccus for sale to Detective Davis, who would be undercover as "Big Louie," at a Hooters restaurant in Lewisville. Detective Davis could only hear Baccus's side of the conversation. He further testified Baccus left the location in his own vehicle, followed by Detective William Scott, while Detective Davis went to the Hooters Restaurant to orchestrate the arrest team. Detective Davis stated Baccus's vehicle was searched before Baccus left to meet Appellant, and no controlled substances were found in the vehicle.

Detective Davis explained he was in contact with Baccus and Detective Scott by telephone from the Hooters Restaurant in Lewisville, while Detective Scott followed Baccus to a gas station in Dallas at the intersection of Inwood and I–35. There, he said, Baccus met with Appellant and Horace Minafee, who was with Appellant in Appellant's vehicle. Detective Davis testified he was not expecting Baccus to meet with anyone else, only Appellant. It is unclear from Detective Davis's testimony if he expected Baccus to rendezvous with Appellant at the gas station or if the meeting in Dallas was unexpected. Detective Davis admitted he did not put in his report

any information regarding the stop at the gas station. Detective Davis stated that Baccus, Appellant, and Minafee then drove on to the Hooters Restaurant in Lewisville. Once there, Baccus then met with Detective Davis inside and told him "It's here; it's a go" whereupon Davis told Detective Scott to initiate the arrest. Detective Davis stated Appellant remained seated in the driver's seat of his vehicle while Minafee had exited and was standing near the vehicle. Police arrested Appellant and Minafee. Detective Davis testified approximately nine ounces of cocaine were found rolled inside a newspaper on Minafee, in the sleeve of his jacket. No drugs were found in Appellant's possession or in his vehicle, and it does not appear that any money exchanged hands at any time.

The State also called Detective Scott, who testified he had participated in the search and arrest of Baccus and was present when Baccus offered to cooperate with the police and to contact the person he identified as Appellant. He recalled that as a result of the telephone call Baccus made, they were going to do a "buy/bust" operation of about a quarter of a kilogram of cocaine in Lewisville on the Hooters parking lot. Detective Scott testified his task was to maintain surveillance of Baccus and follow him to a location in Dallas and then back to the Hooters restaurant in Lewisville. Detective Scott testified that, at the gas station, he observed Baccus meet with Appellant and another individual at the gas pumps. The other individual was later identified as Horace Minafee. Detective Scott testified he was expecting only Appellant at the gas station, not Minafee.

Detective Scott stated the individuals got back into their cars, and, as they began to leave, he saw Baccus pull his car up next to the car driven by Appellant. Detective Scott testified he "saw a rolled-up newspaper pass from the open passenger window of the Baccus vehicle to [Appellant]." Detective Scott testified that this confused him because, as he understood the plan, the "package" would be passing from Appellant's vehicle to Baccus's vehicle. He did not see anything at the gas pumps to help him understand what he was observing. Detective Scott did not know where any drugs came from or where they went.

Detective Scott stated he called Detective Davis and the Dallas police to ask them to intercept Appellant's vehicle, thinking that events were not proceeding as planned, but he was satisfied when he saw Appellant's vehicle follow the Baccus vehicle onto the northbound lane of I–35, headed toward Lewisville. He continued to follow both vehicles some nineteen or twenty miles from the gas station to the restaurant parking lot, where the police arrested Appellant and Minafee.

According to Detective Scott, he had observed Detective Davis search Baccus and recalled that Baccus's vehicle had also been searched, although he did not say by whom, before Baccus left to drive to the gas station. He maintained close contact with Baccus's vehicle as he followed it, Baccus did not stop anywhere or contact anyone before arriving at the gas station, and Appellant and Minafee were the only persons he saw in the parking lot of the gas station.

The State also called Paul Baccus to testify. Baccus testified he had known Appellant through Appellant's uncle for about six months, his past dealings with Appellant included buying and selling drugs, and he had bought drugs from Appellant approximately thirty to fifty times. Baccus also testified he had known Minafee for about four months and that Minafee was a drug addict who had bought drugs from Baccus and conducted "transactions"

for him. Baccus stated that the week before February 11, the date of the search of his residence, he had contacted Appellant and told Appellant that somebody had contacted him about buying a "quarter kilo of cocaine" and that he would contact Appellant "if the deal presented itself."

Baccus testified that, on February 11 during the search at his residence, he asked Detective Davis if there was anything he could do to avoid going to jail, and Davis began to ask him about people he might know. Baccus stated that, as a result of his conversation with Detective Davis, he called Appellant and told him he had been contacted by the people who wanted to buy the "quarter kilo of cocaine" and all Appellant needed to do was arrange the transaction. Baccus further stated Appellant told him he would contact him when he had the narcotics in his possession and Appellant contacted him later in the day with a plan for them to meet at a gas station in Dallas, so he headed there. Baccus stated that when he arrived at the gas station, he saw Appellant and Minafee at the gas pumps. Baccus recalled that Appellant and Minafee were in Appellant's vehicle, a gray Oldsmobile. Baccus said he met with Appellant and "verified" Appellant had the cocaine. Baccus described the cocaine as packaged in newspaper and stated he was able to look inside the newspaper and see the cocaine.

Baccus testified Appellant then gave him the cocaine as they were leaving, and he contacted Detective Davis and told him that he was on his way to Lewisville with the drugs. But Detective Davis did not want him to have the cocaine in his possession, Baccus recalled; therefore, he flagged down Appellant and returned the cocaine to him. Baccus further testified Appellant and Minafee followed him to the Hooters restaurant and they were, in turn, all followed by Detective Scott. When they arrived at the restaurant, Baccus told Appellant he was going inside to get the money. When Baccus went back outside, he was arrested along with Appellant, Minafee, and Detective Davis, who was still undercover as "Big Louie."

The defense called Horace Minafee. Minafee testified Baccus called him on February 11 and asked him to come to Lewisville to do a drug transaction. According to Minafee, he was supposed to pick up a package of cocaine from a Fina gas station and meet Baccus at the Hooters restaurant in Lewisville. Minafee said he told Baccus he did not have a way to get there because he did not have a working car but Baccus replied that he would call Appellant and see if he would drive Minafee to the restaurant. Minafee testified he then walked down his street and met Appellant, who was driving toward him. Minafee asked Appellant if Baccus had called him about giving Minafee a ride to Lewisville, and Appellant replied that Baccus had done so. But, according to Minafee, as far as he knew, Appellant did not know Minafee was doing a drug transaction for Baccus.

Minafee testified that, on their way from Dallas to the Hooters in Lewisville, he told Appellant to pull in at a Fina station because he needed some cigarettes. Minafee stated he went over to an outside ice machine, retrieved a package of drugs from behind it that had supposedly been left there by Baccus, and placed the package in his jacket sleeve. Minafee testified he and Appellant then left the station and continued on to the restaurant but that he never told Appellant about the drugs he had retrieved. Police arrested him and Appellant when they arrived at Hooters. Minafee stated he was currently incarcerated in the Denton County Jail, he was testifying because Appellant did not know about the drug transaction, and he felt Appellant

should not get in trouble for what he, Minafee, had done.

Minafee admitted he is a crack addict and testified he was going to be paid $1,500 in money and drugs by Baccus for picking up the package of cocaine and taking it to Baccus at the Hooters for a sale. Minafee testified that he lived a block or two from Appellant and his wife, did chores for him and cleaned his yard, had known Appellant about a year, and had never known Appellant to sell drugs. On cross-examination, Minafee acknowledged that, although he knew that Appellant had spoken with Baccus before Appellant picked Minafee up, he did not know what Baccus told Appellant about why Minafee needed a ride. Minafee denied he told police on the day he was arrested that he had retrieved the cocaine from under a rock where it had been hidden by a Cuban. The State recalled Detective Scott to impeach Minafee's denial. Detective Scott testified that when he had interviewed Minafee after his arrest, Minafee told him the cocaine was left under a rock in a vacant field by an unnamed Cuban.

The jury charge included an instruction on the law of parties and allowed the jury to convict Appellant if they found beyond a reasonable doubt that Appellant committed the charged offense either by his own conduct or "with intent to promote or assist the commission of the offense of possession with intent to deliver a controlled substance, ... solicited, encouraged, directed, aided, or attempted to aid Horace Minafee, Jr. in committing the offense." Additionally, the trial court denied Appellant's request for a lesser included charge of possession. The jury found Appellant guilty. Appellant pled true to an enhancement count, and the jury assessed his punishment at sixty-five years' confinement and a $10,000 fine.

## Discussion

Article 38.141 of the code of criminal procedure, enacted effective September 1, 2001, provides that a defendant may not be convicted on an informant's testimony unless the testimony is corroborated:

(a) A defendant may not be convicted of an offense under Chapter 481, Health and Safety Code, on the testimony of a person who is not a licensed peace officer or a special investigator but who is acting covertly on behalf of a law enforcement agency or under the color of law enforcement unless the testimony is corroborated by other evidence tending to connect the defendant with the offense committed.

(b) Corroboration is not sufficient for the purposes of this article if the corroboration only shows the commission of the offense.

TEX.CODE CRIM. PROC. ANN. art. 38.141 (Vernon 2005); see also Cantelon v. State, 85 S.W.3d 457, 459–60 (Tex.App.-Austin 2002, no pet.).

In interpreting article 38.141, courts have looked to article 38.14 of the code of criminal procedure. TEX.CODE CRIM. PROC. ANN. art. 38.14 (Vernon 2005). Article 38.14 was in existence long before the enactment of article 38.141 and contains substantially the same language, requiring corroboration of accomplice witness testimony by other evidence. See Torres v. State, 137 S.W.3d 191, 195–96 (Tex.App.-Houston [1st Dist.] 2004, no pet.); Young v. State, 95 S.W.3d 448, 451 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd); Cantelon, 85 S.W.3d at 459–60 (noting statutes substantially the same and suggesting same purpose and same standard for corroboration should apply).

Article 38.14 applies to an accomplice who, by definition, participated with the accused in the commission of the

charged offense and, therefore, would have a selfish incentive to testify against the defendant to secure relief from prosecution or a lessened punishment. *Young*, 95 S.W.3d at 451; *Cantelon*, 85 S.W.3d at 460. The purpose of article 38.14 is to assure that a jury does not consider an accomplice witness's testimony unless it finds that other evidence corroborates the discredited witness's testimony. *Cantelon*, 85 S.W.3d at 460; *see also Young*, 95 S.W.3d at 451 (citing *Blake v. State*, 971 S.W.2d 451, 454 (Tex.Crim.App.1998)); *McDuff v. State*, 943 S.W.2d 517, 520 (Tex.App.-Austin 1997, pet. ref'd). The underlying premise is that such a witness is a "discredited witness" and that "the testimony of an accomplice witness is to be carefully scrutinized not only because of any interest he or she might have, but because her or his testimony is evidence from a corrupt source." *Beathard v. State*, 767 S.W.2d 423, 429 (Tex.Crim.App.1989) (quoting *Paulus v. State*, 633 S.W.2d 827, 843 (Tex. Crim.App.1981)).

 Article 38.141 applies to informants or covert witnesses who work with the police for self-interested reasons. *Cantelon*, 85 S.W.3d at 460. The informant generally has a motive or hope for personal gain. *Id.* Often they work for compensation or to have charges against them dismissed. *Id.* Reflecting the same legislative policy regarding testimony of accomplices, because an informant could fall into the class of a discredited witness with selfish interests and possibly corrupt motives, the legislature has imposed the same standard of corroboration for an informant's testimony. *Id.* Therefore, in applying the requirement for corroboration of an informant's testimony imposed by article 38.141, we assume that the legislature was aware of case law interpreting the similar language of article 38.14, and we look to case law regarding that statute. *Young*, 95 S.W.3d at 451; *Cantelon*, 85 S.W.3d at 460.

### Sufficiency of Corroboration

 In his first point, Appellant argues that there was insufficient evidence to corroborate Baccus's testimony. It is well established that a challenge of insufficient corroboration of an accomplice witness's testimony is not the same as a challenge of legally or factually insufficient evidence to support the verdict. *Cantelon*, 85 S.W.3d at 460 (citing *Cathey v. State*, 992 S.W.2d 460, 462–63 (Tex.Crim.App. 1999) (declining to impose legal and factual sufficiency standards upon a review of accomplice witness testimony under article 38.14)). Likewise, legal and factual sufficiency standards of review are not applicable to a review of sufficiency of covert witness testimony under article 38.141. *Brown v. State*, 159 S.W.3d 703, 711 (Tex. App.-Texarkana 2004, pet. ref'd), *cert. denied*, ⸺ U.S. ⸺, 126 S.Ct. 485, 163 L.Ed.2d 369 (2005); *see also Torres*, 137 S.W.3d at 196. The corroborating evidence requirement is satisfied if there is some other evidence that tends to connect the accused to the commission of the offense. *Brown*, 159 S.W.3d at 711; *Torres*, 137 S.W.3d at 196; *Cantelon*, 85 S.W.3d at 461.

██ To determine the sufficiency of the corroborating evidence, we first eliminate the testimony of the covert witness and ask whether other inculpatory evidence tends to connect the accused to the commission of the offense, even if it does not directly link the accused to the crime. *See Cantelon*, 85 S.W.3d at 461 (citing *McDuff v. State*, 939 S.W.2d 607, 612 (Tex. Crim.App.1997)). We must view the corroborating evidence in the light most favorable to the verdict. *See id.* (citing *Knox v. State*, 934 S.W.2d 678, 686–87 (Tex.Crim.App.1996)). No precise rule can

be formulated regarding the amount of evidence required as corroboration of the testimony of a covert witness; each case must be judged on its own facts. *Id.* The tends-to-connect standard does not present a high threshold. *See id.* (citing *In re C.M.G.*, 905 S.W.2d 56, 58 (Tex.App.-Austin 1995, no writ)).

■ The corroborating evidence does not, by itself, have to establish the guilt of the defendant beyond a reasonable doubt, but it does have to tend to connect the defendant with the offense. *McDuff*, 939 S.W.2d at 613; *Brown*, 159 S.W.3d at 711; *Torres*, 137 S.W.3d at 196. Evidence that merely provides corroboration of "details" of the accomplice's testimony is not sufficient if it does not corroborate a fact that tends to connect the defendant to the offense. *Beathard*, 767 S.W.2d at 428; *Losada v. State*, 721 S.W.2d 305, 308 (Tex. Crim.App.1986). The accused's mere presence in the company of the informant before, during, and after the commission of the offense is insufficient by itself as corroboration, but evidence of such presence coupled with other "suspicious circumstances" may tend to connect the accused to the offense. *See Dowthitt v. State*, 931 S.W.2d 244, 249 (Tex.Crim.App.1996) (interpreting accomplice witness corroboration requirement); *Brown*, 159 S.W.3d at 711; *Torres*, 137 S.W.3d at 196.

■ Even apparently insignificant incriminating circumstances may sometimes afford satisfactory evidence of corroboration. *Brown*, 159 S.W.3d at 711; *Jefferson v. State*, 99 S.W.3d 790, 793 (Tex. App.-Eastland 2003, pet. ref'd). Cumulative evidence of suspicious circumstances can be sufficient evidence that "tends to connect the accused to the alleged offense even if none of the circumstances would be sufficient individually." *Brown*, 159 S.W.3d at 708; *Cantelon*, 85 S.W.3d at 460-61. "All the law requires is that there

be some [corroborating] evidence from which rational jurors could conclude that this [other] evidence sufficiently tended to connect Appellant to the offense." *Jefferson*, 99 S.W.3d at 793 (quoting *Hernandez v. State*, 939 S.W.2d 173, 179 (Tex.Crim. App.1997)).

■ When corroborating evidence required for a conviction is lacking, the defendant will be entitled to a verdict of acquittal. TEX.CODE CRIM. PROC. ANN. art. 38.17 (Vernon 2005); *see Ex parte Reynolds*, 588 S.W.2d 900, 902 (Tex.Crim.App. 1979), *cert. denied*, 445 U.S. 920, 100 S.Ct. 1284 (1980) (holding jury cannot return any verdict except acquittal when evidence is insufficient to corroborate accomplice witness); *Fare v. State*, 1 S.W.3d 928, 930 (Tex.App.-Beaumont 1999, pet. ref'd) (holding remedy for lack of sufficient corroborating evidence is acquittal).

■ In this case, article 38.141 applies. The informant, Baccus, was indisputably acting covertly on behalf of law enforcement. He was cooperating in the hopes of completing enough "case credits" to have his charges dismissed. Accordingly, to determine the sufficiency of the corroboration of the informant, we must eliminate all of his testimony and determine whether there is other evidence that tends to connect Appellant to the offense of possession with intent to deliver.

In *Cantelon*, an officer testified that the informant met the defendant at an agreed upon time and place, that he searched the informant, and that he watched as the informant, carrying a specific amount of cash and an audio recorder, met with the defendant and then returned without the cash, carrying a bag of marijuana and an audiotape recording of the drug transaction, on which the defendant's voice was identified. 85 S.W.3d at 462. In addition, a videotape

recording was made of the informant's actions as he entered the defendant's car. *Id.* This evidence was held to sufficiently connect the defendant with the crime. *Id.* Likewise, in *Jefferson,* an officer testified that he searched the informant, placed an audio recording device on her and turned it on, observed the informant enter a house to make a drug transaction, turned the device off when she returned and introduced the recording into evidence and identified the defendant's voice on the recording. This evidence was held sufficient to corroborate the informant's testimony. 99 S.W.3d at 792; *see also Brown,* 159 S.W.3d at 708–11 (holding informant's testimony corroborated by evidence consisting of defendant's presence at scene coupled with cash found in his pocket carrying serial numbers matching those provided to informant for controlled buy, and videotape of transaction included conversation of defendant regarding prior drug sale); *Dennis v. State,* 151 S.W.3d 745, 749 (Tex.App.-Amarillo 2004, pet. ref'd) (holding testimony of officer and narcotics investigator who both witnessed drug transaction, coupled with audio recording of transaction, constituted sufficient corroboration); *Tave v. State,* No. 2-02–449–CR, 2004 WL 1175283, at *2 (Tex.App.-Fort Worth May 27, 2004, pet. ref'd) (not designated for publication) (holding informant's testimony of actual transfer of a controlled substance sufficiently corroborated by testimony of DEA agents that informant was given $150 to make controlled buy and by video recording made by informant that showed him buying two $50 "rocks" from defendant); *Leal v. State,* No. 05–03–00281–CR, 2004 WL 1119732, at *2 (Tex. App.-Dallas May 20, 2004, pet. ref'd) (not designated for publication) (holding officer's identification of defendant's voice on tape recording of phone call setting up controlled buy sufficient to corroborate informant's testimony regarding subsequent buy); *Woods v. State,* No. 12–02–00296–CR, 2004 WL 1109893, at *2 (Tex. App.-Tyler May 12, 2004, no pet.) (not designated for publication) (holding corroborating evidence sufficient that officer drove informant to defendant's house, saw defendant admit informant, and saw informant come out with drugs, and defendant's voice was identified on audio tape of transaction).

In contrast, in *Young v. State,* the First Court of Appeals held the corroboration of an informant's testimony to be insufficient. 95 S.W.3d 448, 452 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd). In *Young,* an informant named Farr agreed to help a narcotics task force apprehend Young, who was an alleged cocaine dealer. *Id.* at 449. Police searched Farr and his vehicle before giving him $600 and an audio recorder to make a controlled buy. *Id.* at 450. A police officer followed Farr, but the officer did not follow him all the way to the house where he was supposed to be going, and it was unclear how much distance separated the officer from Farr. *Id.* Farr returned with over nineteen grams of cocaine and identified Young as the one who sold him the cocaine. *Id.* Farr identified a photograph of Young's house as the location of the cocaine transaction and identified Young's voice on the audio tape; however, no one else identified Young's voice on the tape. *Id.*

The State argued in *Young* that the photograph and Young's voice on the recorder were sufficient to connect him to the offense, but the court of appeals disagreed. *Id.* at 451. The court determined that the photograph of Young's house simply did not connect him to a cocaine transaction, and the State offered no other evidence that linked his house to a cocaine transaction. *Id.* No other witnesses testi-

fied that Farr entered Young's house or that a cocaine transaction took place there. *Id.* at 452. As for the tape recording, the court concluded that without Farr's testimony to identify Young's voice, there was nothing to connect him to the voices on the tape, and the tape showed nothing more than the "commission of an offense." *Id.* (citing TEX.CODE CRIM. PROC. ANN. art. 38.141). Noting that no other evidence in the record tended to connect Young to the offense, the court held the evidence to be legally insufficient to support the conviction and rendered a judgment of acquittal. *Id.; see also Williams v. State,* 864 S.W.2d 81, 83 (Tex.App.-Tyler 1993, pet. ref'd) (holding evidence that police officer drove informant to location and waited outside while transaction occurred insufficient to corroborate informant's identification of defendant as person from whom he purchased drugs).

When we eliminate Baccus's testimony, we are left with the testimony of Detectives Davis and Scott. The State argues that those officers' testimony establishes that Baccus called Appellant to set up the "buy" at Hooters. We disagree. The officers heard only Baccus's side of the conversation. Detective Davis testified that he "understood" Baccus was speaking with Appellant but did not explain how he arrived at that understanding. No proof was introduced that Baccus even called or actually spoke with Appellant. There was no testimony as to the purpose of a meeting in Dallas or why the transaction described by Detective Scott took place at the gas station in Dallas when the "buy/bust" was to take place at Hooters in Lewisville. Moreover, Detective Davis did not see what occurred at the gas station in Dallas because he was at the restaurant in Lewisville arranging the arrest team. Davis and Scott acknowledged that the drugs were found rolled up in a newspaper

on Minafee. No drugs were found on Appellant or inside his vehicle.

The State argues that Baccus's testimony is corroborated by Detective Scott's testimony that he saw a meeting between Baccus, Appellant, and Minafee at the gas station and saw Baccus "pass the drugs" to Appellant. But the only exchange that Detective Scott observed during this meeting was a rolled-up newspaper passing from the open passenger window of the Baccus vehicle to that of Appellant as the two vehicles were about to leave the gas station. Detective Scott did not see what was in the newspaper, did not know where the newspaper came from, and was "confused" as to why it was being passed by Baccus to Appellant, rather than from Appellant to Baccus. The only person to testify as to why this occurred or as to what was inside the newspaper at the gas station was Baccus.

Thus, when we exclude Baccus's testimony from consideration, we are left with direct evidence that Appellant, accompanied by Minafee, was present at a meeting at a gas station in Dallas with Baccus, that Baccus handed Appellant a rolled-up newspaper later found to contain cocaine, and that Appellant, accompanied by Minafee, followed Baccus's car to the Hooters restaurant in Lewisville. However, the Detectives' testimony provided the following additional circumstances: (1) they were present and heard Baccus call someone on the telephone and set up a transaction for a buy of a quarter of a kilogram of cocaine by "Big Louie" at an agreed place, the Hooters restaurant in Lewisville; (2) Detective Scott saw Appellant driving a gray Oldsmobile, accompanied by a second male, Minafee, meeting with Baccus at a gas station in Dallas, tending to corroborate Detective Scott's "expectation" that Baccus would meet Appellant there, driving a gray Oldsmobile; (3) Detectives

Davis and Scott testified that Baccus, as well as Baccus's car, had been searched and that he had no drugs when he left his home to drive to the gas station in Dallas; nor did they observe him meet with anyone other than Appellant and Minafee; (4) after seeing the meeting at the gas station, and although "confused" about what he saw, Detective Scott saw Baccus at the gas station holding a rolled-up newspaper later found to contain nine ounces of cocaine; (5) Detective Scott saw Baccus pass the rolled-up newspaper to Appellant in the parking lot of the gas station, which is at least consistent with Baccus's testimony explaining that he gave the drugs to Appellant at the gas station because Detective Davis told him he did not want the drugs to be in Baccus's possession; (6) Appellant was apprehended in the Hooters parking lot, establishing Appellant's presence at the scene of the planned "buy"; and (7) upon the arrest of Appellant and Minafee, approximately nine ounces of cocaine were found inside the rolled-up newspaper on Minafee, as described by Baccus.

Viewed in the light most favorable to the verdict, and when coupled with the undisputed evidence that the cocaine was found in the rolled-up newspaper and that Appellant was present both for the meeting with Baccus at the gas station and at the scene of the planned "buy," rational jurors could conclude that the cumulative suspicious circumstances tended to connect Appellant to the offense. We therefore hold that there was some other evidence tending to connect Appellant to the offense, satisfying the corroboration requirement of article 38.141 in order for the jury to be able to consider Baccus's testimony as evidence of guilt. *See* TEX.CODE CRIM. PROC. ANN. art. 38.141. We overrule Appellant's first point. It is, therefore, unnecessary to address Appellant's second point, that the evidence was legally insufficient to support his conviction if Baccus's testimony is excluded from consideration. *See* TEX.R.APP. P. 47.1.

### *Failure to Instruct Jury*

In his third point, Appellant argues that the trial court erred by failing to instruct the jury that a confidential informant's testimony must be corroborated, in conformity with article 38.141. We agree. Our holding that there was some "other evidence" to satisfy the statutory corroboration requirement does not eliminate the need for an instruction. *See Saunders v. State*, 817 S.W.2d 688, 690 (Tex.Crim.App.1991) (noting court "might disagree" with court of appeals's holding that there was no evidence tending to connect defendant to offense, but failure to instruct jury in accordance with corroboration requirement for accomplice witness testimony was nevertheless harmful error). When the State elicits testimony from an accomplice for the purpose of proving a defendant's guilt, the defendant is entitled to an instruction that a conviction cannot be based on the accomplice testimony unless the jury believes the testimony to be true, and unless there is other evidence tending to connect the defendant to the offense. *Green v. State*, 72 S.W.3d 420, 423 (Tex.App.-Texarkana 2002, pet. ref'd) (citing *Selman v. State*, 807 S.W.2d 310, 311 (Tex.Crim.App.1991)). This rule serves the legislative policy reflected by article 38.14 that such testimony implicating another person should be viewed with caution, considering the incentives to lie in order to avoid punishment or to shift blame to another person. *Id.* (citing *Blake v. State*, 971 S.W.2d 451, 454 (Tex.Crim. App.1998)); *Cantelon*, 85 S.W.3d at 460 (noting same policy served by article 38.141 regarding informants); *see Burton v. State*, 442 S.W.2d 354, 357 (Tex.Crim. App.1969) (approving instruction).

■ When the State relies upon testimony that is required by statute to be corroborated, it is error for the trial court *not* to instruct the jury that the defendant cannot be convicted on such testimony unless there is other evidence tending to connect the defendant with the offense and that evidence showing only the commission of the offense is insufficient. *See, e.g., Herron v. State,* 86 S.W.3d 621, 631 (Tex. Crim.App.2002) (holding failure to instruct jury as to requirement of corroboration of accomplice witness testimony was error); *Saunders,* 817 S.W.2d at 690 (same); *Jefferson,* 99 S.W.3d at 793 (holding failure to instruct jury on requirement of corroboration of informant's testimony is error).

Appellant concedes that no objection was made to the trial court's failure to charge the jury on the requirements of article 38.141 here, but asserts that the trial court's error resulted in harm under the "egregious harm standard" of *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim. App.1985) (applying egregious harm analysis to unobjected-to charge error). *See Herron,* 86 S.W.3d at 632 (holding egregious harm standard applied where appellant failed to object to lack of instruction on accomplice witness testimony); *Saunders,* 817 S.W.2d at 692 (holding egregious harm standard applied because instruction constitutes "law applicable to the case"); *Jefferson,* 99 S.W.3d at 793 (applying egregious harm standard when defendant failed to object to lack of article 38.141 instruction regarding informant's testimony).

■ Under the "egregious harm standard," the omission of a corroborating-evidence instruction may be rendered harmless if other evidence than the testimony of the accomplice witness or informant does exist that fulfills the purpose of the instruction. *See Herron,* 86 S.W.3d at 632. This is said to be so because the instruction merely informs the jury that it cannot use the testimony of the accomplice or the informant unless it is first determined that other evidence exists connecting the defendant to the offense. *Id.* Once it is determined that such other evidence exists, the purpose of the instruction may have been fulfilled. *Id.* But this is not always true.

■ A harm analysis for error in omitting the cautionary instruction on the requirement of corroborating evidence must be "flexible," taking into consideration both the existence and the strength of such other evidence. *Id.* In determining the strength of corroborating evidence, we are instructed that we must examine (1) its reliability or believability and (2) the strength of its tendency to connect the defendant to the offense. *Id.* Under the "egregious harm" analysis, omission of the instruction to the jury on the requirement of corroborating evidence will generally be harmless "unless the corroborating [ ] evidence is 'so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive.'" *Id.; Saunders,* 817 S.W.2d at 689.

In *Saunders,* involving arson and criminal conspiracy, the court of criminal appeals found harm under the egregious harm analysis in failing to submit the jury instruction requiring corroboration of an accomplice witness where the corroborating non-accomplice testimony was weak and was contradicted by other evidence. 817 S.W.2d at 689. There was evidence of suspicious financial circumstances including that the structure had recently been insured for more than its replacement cost, the insured had recently consolidated several loans into a very large note to his bank, items of value had been removed from the structure shortly before the fire, and the insured had twice before had claims for losses in his business. *Id.* at

691. However, other evidence was undisputed that the house was worth more than its replacement cost, the nature of the defendant's business typically required large loans to finance his operation, his business before the fire had been profitable, the bank was not concerned as to his solvency, and the previous claims were not unusual in the defendant's business. *Id.* at 691–92. The remaining evidence was described by the court as a "rather weak inference" that the defendant contrived to impede the investigation by destroying evidence and that he saved items of personal property by storing them elsewhere, but the court noted that this evidence was conflicting and the inculpatory inferences from it were weak. *Id.* at 692. Thus, the court held, egregious harm had been shown because rational jurors would have found the State's case "significantly less persuasive had they been told that [the accomplice's] testimony could not be accepted without corroboration." *Id.* Notably, the court stated, "Rational jurors may not utterly disregard undisputed evidence without a sensible basis for thinking it unreliable any more than they may simply assume a critical part of the proof without evidence having an inclination to confirm it." *Id.*

In this case, critical proof is lacking when Baccus's testimony is set aside. There is no testimony that either officer verified that Baccus was in fact speaking with Appellant on the telephone to set up the "buy" at the Hooters restaurant. No audio or video was made of the transactions described by Baccus in which he said he verified that Appellant had the drugs inside the newspaper or that Appellant gave the package to him at the gas station. The jury would have had to assume these critical facts without evidence tending to confirm them, which the jury could not do. *Saunders,* 817 S.W.2d at 692. What Detective Scott testified he observed was not delivery by Appellant of drugs to Baccus at the gas station, but the exact opposite, a package passed by Baccus to Appellant. There was no evidence of any agreement for price nor of any exchange of money. The drugs later found inside the newspaper were found on Minafee, not Appellant. And Detective Scott, who had maintained surveillance on Baccus from his residence in Lewisville to the gas station in Dallas and back to the Hooters in Lewisville, agreed he could only speculate as to how the cocaine wound up in Minafee's sleeve. Finally, no one other than Baccus testified that Appellant was ever aware of the presence of the cocaine inside the rolled-up newspaper or that Appellant initially possessed and delivered the package to Baccus at the gas station.

The State argues that what Baccus said would happen is what happened, thus circumstantially corroborating his testimony. We cannot agree. While there was an agreed upon place for the drugs to be transferred to Baccus—the Hooters restaurant in Lewisville—that is not what happened. The transfer of the package was the wrong way, from Baccus to Appellant, and at the wrong place, a gas station some twenty miles away in Dallas. Additionally, Baccus's version of the facts was directly contradicted by Minafee's testimony that Baccus had called him, not Appellant, to do the transaction, that he-not Appellant-was instructed to make the delivery to the Hooters in Lewisville, and that Appellant knew nothing of the drugs.

Minafee, the drug addict, had little credibility but apparently nothing to gain by his testimony since he had already pleaded guilty and received a twenty-five-year sentence for his participation in the offense. On the other hand, the State offered no evidence indicating that Baccus's testimony was either credible or reliable. And Baccus, the drug dealer who had been

caught and had agreed to be the covert witness, had much to gain by inculpating Appellant. Indeed, the jury could have concluded from the evidence including Minafee's testimony that Baccus used Minafee as his minion to set up Appellant for a take-down in an effort to earn his first "credit." Mindful of Baccus's admittedly strong incentive to avoid prison by helping to catch "sources" for the police, and absent critical evidence from which they could infer that Appellant ever knew of the drugs or the planned "buy," we believe rational jurors would have found the State's case "significantly less persuasive" had they been properly instructed that they could not accept Baccus's testimony without corroboration by other evidence tending to connect Appellant to the offense of possession with intent to deliver, either as a principal or a party. Under these circumstances, we conclude that the trial court's failure to give a corroborating-evidence instruction to the jury under article 38.141 was critical to the outcome and effectively denied Appellant a fair trial, resulting in egregious harm. We sustain Appellant's third point.

### Conclusion

Having overruled Appellant's first point but having sustained Appellant's third point that harmful error resulted from the failure of the trial court to give the jury the corroborating-evidence instruction, we reverse the trial court's judgment and remand for new trial. Because of our disposition, we need not reach Appellant's second point, in which he argues that the evidence is legally insufficient if Baccus's testimony is excluded, and his fourth point, in which he complains of punishment-phase charge error. *See* Tex.R.App. P. 47.1.