Opinion issued August 12, 2010.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00093-CR

———————————

Tristian Diondray Weathers, Appellant

V.

State of
Texas, Appellee



 



 

On Appeal from the 185th District Court

Harris County, Texas



Trial Court Case No. 1173115

 



MEMORANDUM OPINION

          A
jury found Tristian Diondray Weathers guilty of burglary of a habitation and
assessed a sentence of sixty years’ incarceration.  On appeal, Weathers contends that the trial
court erred by not instructing the jury about the law of accomplice witness
testimony.  Finding no error, we affirm.

Background

One afternoon in June 2008, Filiberto
Perez and his teenage son, also named Filiberto, looked through the front
window of their home and saw three men with black suitcases in the yard of his
neighbor, Glenda Salazar.  The men, later
identified as Weathers, Sotero Chavez, and Jamarcus Smith, carried the
suitcases through Salazar’s front door into her home and then carried them out
to a brown four-door car parked in the driveway.  

          Perez
called 911 to report a burglary in progress and gave them the license tag
number for the parked car. The Harris County Sheriff’s Department traced the
number to Weathers at an address on Gatton Park, a street a few miles away.  The Department dispatched Deputy C. Mullins
to respond to the call.  Because the car
had already left the site of the burglary, Mullins first headed for the address
listed on the car registration and called for back-up to meet him there.  As Mullins approached, he saw several people,
including Weathers, standing in the driveway by a brown four-door car bearing the
reported license plate number.  Deputy R.
Lee had also arrived at the scene to assist Mullins.

When the people in the driveway
noticed the patrol cars, they ran into the house.  The officers followed, noting that a black
suitcase like the one Perez described sat open in the living room with
electronics inside.  The officers reached
the back door, which was open, and saw that some of the people fled through
broken boards in the back fence.  A few
individuals, however, remained near the car and in the house.  The officers detained three of the men,
including Weathers.

While other officers held Weathers
and the other suspects, Mullins left to meet with the Perezes.  The Perezes agreed to accompany Mullins to
the Gatton Park house to identify the suspects. 
When they arrived a little less than an hour later, Perez identified
Weathers as one of the burglars he saw at Salazar’s home, explaining that he
recognized Weathers by the white sleeveless t-shirt he was wearing.  A search of Weathers’ person led to discovery
of Salazar’s identification in his pocket. 
The officers recovered numerous electronics and jewelry from the Gatton
Park house and the brown car that Salazar later identified as hers.  The police arrested and charged Weathers with
burglary of a habitation.  

          During
its case-in-chief, the State called Chavez to testify.  Chavez confirmed that, earlier on the day of
the burglary, Weathers asked him if he wanted “to go hit a lick.”  Chavez explained that he understood Weathers’
question as asking if Chavez wanted to break into somebody’s house and take
their belongings.  Chavez said he would,
and got into Weathers’ car along with Smith. 
Chavez explained that once they arrived at Salazar’s house, they went
their separate ways to collect the valuables and that Weathers kept telling
them to hurry up.  Chavez brought some of
the stolen items to a pawnshop, where they were later recovered by the police
and reclaimed by Salazar, along with a pawnshop video of Chavez’s
transaction.  With this evidence, the
police charged Chavez with felony theft. 


Charge Error

A.      Standard
of review

          Weathers’
single issue on appeal concerns the absence of a jury instruction on the law of
accomplice witness testimony.  We review
a claim of jury-charge error using the procedure set out in Almanza v. State, 686 S.W.2d 157 (Tex.
Crim. App. 1985).  First, we determine
whether there is error in the charge.  Ngo v. State, 175 S.W.3d 738, 743 (Tex.
Crim. App. 2005) (citing Middleton v.
State, 125 S.W.3d 450, 453 (Tex. Crim. App. 2003)).  If error exists and the appellant objected to
the error at trial, reversal is required if the error “is calculated to injure
the rights of the defendant,” in other words, if there is “some harm.”  Almanza,
686 S.W.2d at 171.  If the error was not
objected to, it must be “fundamental” and will require reversal only if it was
so egregious and created such harm that the defendant “has not had a fair and
impartial trial.”  Id.; Saunders v. State,
817 S.W.2d 688, 690 (Tex. Crim. App. 1991).  Under both standards, we look to the actual
degree of harm in light of the entire jury charge, the state of the evidence,
including the contested issues and weight of probative evidence, the argument
of counsel, and any other relevant information revealed by the record of the
trial as a whole.  Id.

B.      Corroboration
of informant testimony

The Texas Code of Criminal
Procedure requires that accomplice testimony be “corroborated by other evidence
tending to connect the defendant with the offense committed.”  Tex.
Code Crim. Proc. Ann. art. 38.14 (Vernon 2005); Colella v. State, 915 S.W.2d 834, 838 (Tex. Crim. App. 1995).  An accomplice is an individual who
participates with a defendant in the commission of a crime by doing some
affirmative act with the requisite culpable mental state that promotes the
commission of that offense.  Cocke v. State, 201 S.W.3d 744, 748
(Tex. Crim. App. 2006) (citing Paredes v.
State, 129 S.W.3d 530, 536 (Tex. Crim. App. 2004)); Blake v. State, 971 S.W.2d 451, 454–55 (Tex. Crim. App. 1998); Pena v. State, 251 S.W.3d 601, 607 (Tex.
App.—Houston [1st Dist.] 2007, pet. ref’d). 


The record shows that Chavez agreed
to participate in the burglary with Weathers, went with Weathers and Smith to Salazar’s
home, and removed valuables from the home in connection with the criminal
enterprise.  This evidence requires the
conclusion that Chavez was Weathers’ accomplice in the robbery.  Because the State presented Chavez’s
testimony as part of the evidence used to convict Weathers, the Code of
Criminal Procedure requires that his testimony be corroborated, and failure to
instruct the jury on that requirement is error.  See Herron
v. State, 86 S.W.3d 621, 631–32 (Tex. Crim. App. 2002) (holding that
failure to instruct jury of corroboration requirement for accomplice testimony
was error); see also Simmons v. State,
205 S.W.3d 65, 77 (Tex. App.—Fort Worth 2006, no pet.) (holding that failure to
instruct jury of corroboration requirement for confidential informant testimony
under article 38.141 was error).

C.      Harm

Having determined that the trial
court erred by failing to give the instruction, we must next decide whether the
error harmed Weathers.  Weathers did not request
the instruction or object to its omission, and thus failed to preserve error.  Accordingly, our review focuses on whether Weathers
suffered “egregious harm” as a result of the missing instruction.  See
Herron, 86 S.W.3d at 632 (citing Almanza, 686 S.W.2d at 171); Saunders, 817 S.W.2d at 690; Simmons, 205 S.W.3d at 77.

1.       The
charge

The absence of a jury instruction specifically
requiring corroboration of an accomplice’s testimony likely misled the jury
into believing that Chavez’s testimony did not need to be corroborated because
the charge did not contain an instruction requiring corroboration of the accomplice’s
testimony.  This factor tends to support
a finding of harm.

2.       The
evidence

Non-accomplice evidence need not
directly link the accused to the crime nor independently prove his guilt beyond
a reasonable doubt.  McDuff v. State, 939 S.W.2d 607, 613 (Tex. Crim. App. 1997).  The erroneous omission of an instruction that
tells the jury that testimony must be corroborated generally is harmless unless
the corroborating evidence is “so unconvincing in fact as to render the State’s
overall case for conviction clearly and significantly less persuasive.”  Herron,
86 S.W.3d at 632.  In reviewing the
strength of the corroborating evidence, we “examine (1) its reliability or
believability and (2) the strength of its tendency to connect the defendant to
the crime.”  Id.; see Burks v. State,
876 S.W.2d 877, 888 (Tex. Crim. App. 1994); see
also Simmons, 205 S.W.3d at 77 (applying Herron to informant testimony).

Weathers claims that “the State’s
case against [him] relied heavily on Chavez’s testimony” and, as in the Saunders case, “rational jurors could
have assessed the State’s case as ‘significantly less persuasive’ without
Chavez’s  testimony.”  See
Saunders, 817 S.W.2d at 693. 
According to Weathers, without Chavez, the evidence to prove that
[Weathers] actually entered the residence of the complainant is razor
thin.”  

We disagree.  Independent of Chavez’s testimony, the State
presented ample evidence to support the jury’s finding that Weathers committed
the burglary.  As Weathers notes, the
testimony of Perez and his son, both eyewitnesses, placed Weathers at Salazar’s
home on the day of the burglary.  Perez’s
son identified Weathers as one of the individuals he saw coming out of
Salazar’s house with suitcases and putting them in the trunk of the car.  Both of the officers who responded to the burglary
in progress call testified to the identification of Weathers’ car as the
vehicle used in the burglary, the discovery of Weathers, his car, and the items
stolen from Salazar’s home in Weathers’ car and at his house.  Salazar also appeared and confirmed that she
owned the items recovered from Weathers’ house and car by the officers, as well
as the items recovered from the pawn shop. 


In contrast, the independent
corroborating evidence in Saunders
allowed for “rather weak” inferences (1) that appellant committed arson based
on the fact that appellant had given several inexpensive items for safekeeping
to a neighbor shortly before the fire, but lost numerous valuable and irreplaceable
items in the fire, and (2) that appellant impeded the criminal investigation by
consciously disregarding orders to leave the site intact and burning down the remainder
of the damaged home before arson investigators could examine it, although the
evidence was “far more probative” that his conduct resulted from
misunderstanding, not disobedience.  817
S.W.2d at 692–93.  Here, the quantum of
independent corroborating evidence directly places Weathers and his car at Salazar’s
home, places Salazar’s belongings in Weathers’ car and his home, and places Salazar’s
identification on Weathers’ person with no valid explanation for his possession
of them. 

The independent testimony from the
police officers and eyewitnesses, as well as the owner of the stolen property, standing
alone, is sufficient to connect Weathers to the burglary.  That evidence is not so unconvincing in fact that
it renders the State’s overall case for conviction clearly and significantly
less persuasive.  See Herron, 86 S.W.3d at 632 (holding defendant was not harmed
under lower “some harm” standard “where there is no such basis in the record
for doubting the reliability of the remaining . . . items
of non-accomplice evidence”).  

3.       The
arguments of counsel

          In
its opening argument, the State focused on the testimony of the investigating
officers and the eyewitnesses, the use of Weathers’ car in committing the
burglary and the identification of Salazar’s property in Weathers’ possession.  The State made no mention of Chavez.  

          At
closing, defense counsel attempted to cast doubt on Perez’s identification of
Weathers by the shirt he was wearing and emphasized the defense witnesses’
testimony that Weathers was at home when the burglary occurred.  The State waived its right to open but
reserved rebuttal.  It initially stressed
the effect of the crime on Salazar’s peace of mind and her identification of her
property found in Weathers’ house and car, as well as the eyewitness testimony
from the Perezes identifying Weathers as a participant in the burglary.  The State argued:

Is there any doubt?  And if there was, then you have the one
person who got up here today with no reason to lie.  The one person who got up here and didn’t lie
under oath to all 12 of you: Sotero Chavez. 
He’s doing his time.  He took
responsibility for his part in this.  He
pled.  And he’s not getting a reduction
in sentence.  He’s not getting
anything.  But he got up here and he told
you the truth.  

          He
told you whose idea it was: [Weathers]. 
He told you whose car they took: 
His.  He told you who drove both
ways:  Him.  Told you what this guy said: Do y’all want to
go hit a lick?  

The State concluded with another reference to
Salazar’s testimony.  

          The
State’s waiver of the right to begin closing signals its apparent belief in the
strength of the evidence supporting conviction. 
It used about a quarter of the time in its brief rebuttal discussing
Chavez’s testimony.  The State’s argument
does not emphasize the actual evidence adduced by Chavez’s testimony, but the
reasons why the jury should find his testimony credible.  We conclude that these arguments do not focus
the jury’s attention on Chavez’s testimony in a way that would cause the jury
to rely on it without the corroborating evidence in finding that Weathers
committed the burglary.

4.       Other information in the record

          The
State presented all of the evidence except for Chavez’s testimony in its case
in chief.  It called Chavez only as a
rebuttal witness, after the defense adduced testimony from its witnesses that
Weathers did not participate in the burglary and was at his house when it
occurred.  The testimony elicited from
Chavez directly rebutted Weathers’ defensive theory and identified Weathers as
an active participant in the burglary.  

The record shows that strong and
reliable evidence connects Weathers to the burglary, and the State’s limited
purpose in presenting Chavez’s testimony lessened any impact caused by the lack
of an instruction requiring corroboration of the accomplice’s testimony.  We therefore hold that Weathers was not
egregiously harmed by the lack of an instruction regarding the corroboration
requirement for Chavez’s testimony.

Conclusion

          We
hold that Weathers was not egregiously harmed by the lack of a jury instruction
on the need for independent corroboration of accomplice testimony.  We therefore affirm the judgment of the trial
court.

 

 

 

 

                                                                   Jane
Bland

                                                                   Justice


 

Panel
consists of Chief Justice Radack and Justices Bland and Sharp.

Do
not publish.   Tex. R. App. P. 47.2(b).