**Rodolfo Serna PENA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–06–00203–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Oct. 11, 2007.

Rehearing Overruled Nov. 15, 2007.

Discretionary Review Refused
April 9, 2008.

Patricia Segura, Don R. Cantrell, Houston, for Appellant.

Lori Deangelo Fix, Asst. Dist. Atty., Charles A. Rosenthal, Jr., Dist. Atty.–Harris County, Houston, for appellee.

Panel consists of Chief Justice RADACK and Justices ALCALA and BLAND.

## OPINION

ELSA ALCALA, Justice.

Appellant, Rodolfo Serna Pena, appeals from a judgment convicting him of the felony of possession with intent to deliver a controlled substance weighing at least 400 grams including any adulterants and dilutants. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (f) (Vernon 2003). Appellant pleaded not guilty to the jury. The jury found appellant guilty, and the trial court assessed punishment at 20 years in prison and a $1,000 fine. In three issues, appellant contends that the evidence is insufficient to corroborate the testimony from the accomplice and the informant; the evidence is factually insufficient to support the conviction; and the court erred by failing to instruct the jury that the informant's testimony must be corroborated. We conclude that the evidence is sufficient to support the conviction and that appellant was not egregiously harmed by the trial court's failure to instruct the jury on the corroboration requirement for informant testimony. We affirm.

## Background

An informant paid by the Drug Enforcement Agency (DEA) and the Harris County Sheriff's Office (HCSO) met "Ballo" at a cantina. Ballo agreed to sell the informant two kilograms of cocaine for $16,000 each. Ballo and the informant met at a flea market, where Ballo arrived with two companions in a black truck. One of Ballo's companions spoke to the informant for about five minutes, before leaving in the truck. The informant, in his own car, followed the truck to a service station on Highway 90. While at the service station, the undercover surveillance officer observed the same man who had earlier spoken with the informant, get out of the black truck and into the informant's car.

The informant, now accompanied by Ballo, drove his car from the service station to a Conoco station, where he met with occupants of a parked white Buick. This was the first time the informant met appellant. Appellant was seated in the back seat of the Buick with Jamie Ibarra in the driver's seat and Frank Olivarez in the front passenger seat.

According to the informant, the informant stood on one side of the Buick, while Ballo stood on the other side. The informant stated that Ballo told the occupants in the Buick that the informant was the person who was going to buy the material. The informant said that Ibarra asked for the money. When the informant asked to see the merchandise, appellant pulled a package in a little black bag "from underneath where he was." Appellant gave the package to Olivarez, telling him to "show it to [the informant]." Olivarez took the package from appellant and showed it to the informant, who touched the package to check for firmness. When the informant asked about the second kilogram, appellant responded by signaling to the place where appellant had gotten the first package, stating, "we have the other one here." Appellant then asked the informant about the money. The informant responded that the money was "nearby," requesting that they follow him to get it. Angry that the informant did not have the money, the occupants of the Buick left without culminating the transaction. The informant left the scene in his own car, where he called the undercover surveillance officer to inform him that the cocaine was in the Buick.

The undercover surveillance officer instructed a marked police car to stop the Buick. After receiving the call, Deputy Willis of the Harris County Sheriff's Office (HCSO) saw the Buick make a left turn without signaling. Deputy Nations of the HCSO then performed the traffic stop. When Deputy Nations approached the ve-

hicle, he observed appellant tugging and pulling on the rear seat where he was sitting. Deputy Nations saw the men moving erratically around in the car, which was "swaying back and forth quite a bit." Deputy Willis saw appellant lift the back seat of the Buick, where he placed something underneath the seat. When the three occupants of the Buick were taken out of the car, the two deputies found a loaded revolver on the front seat next to where Ibarra had been seated and one package of cocaine under where appellant had been seated.

A forensic chemist in the controlled substance laboratory of the Harris County Medical Examiner's Office later analyzed the substance found under appellant's seat and determined it to be cocaine weighing 981.6 grams, including adulterants and dilutants. A fingerprint examiner lifted a partial print on the bag that held the substance, but the print had insufficient ridge detail making it inadequate to either exclude or match it to appellant.

At trial, the State called Ibarra, who drove the Buick. Ibarra hoped that the district attorney would "put in a good word" for him with the parole board. Ibarra said that he and Olivarez were together that day snorting cocaine. Ibarra related that he had known appellant for eight years and called appellant to try to get a loan. Appellant told Ibarra that he would give Ibarra the loan if Ibarra drove appellant somewhere. Ibarra and Olivarez picked appellant up at appellant's house and drove to the store in Ibarra's Buick. Ibarra testified that he was not paying attention to whether appellant was carrying anything when he got in the car. According to Ibarra, they drove to the Conoco station after appellant got a call on his cell phone. Ibarra said that a truck was in the Conoco parking lot when they got there. Appellant spoke to the driver of the truck about money. Ibarra testified

that the Buick and the truck were parked next to each other "driver to driver." According to Ibarra, no one got out of either vehicle. Ibarra said that appellant showed the driver of the truck a kilogram of cocaine. Appellant became upset when the driver of the truck did not have the money. When they left the Conoco station, they drove to appellant's house where they were stopped by two patrol cars.

At trial, an undercover surveillance officer testified regarding the events at the Conoco station. The undercover officer testified that he "saw the informant meeting with some individuals in a white Buick." The officer saw the informant meet with the people in the Buick for about five minutes and then everybody left. After speaking with the informant, the officer advised patrol cars to stop the Buick for the suspected narcotics.

Appellant's testimony differed from the testimony of the informant and Ibarra. Appellant testified that Ibarra stopped by his house and asked appellant to go to the Conoco station with him and another man whom appellant did not know. They drove to the Conoco station, where they parked in front. Ibarra got out of the car to go inside to buy soft drinks, but instead did not enter the store; rather, Ibarra began talking with the occupants of a black truck. Ibarra then came back to the Buick "a little nervous," stating that they should leave. Ibarra left the Conoco station "burning rubber," driving to appellant's house, where they were stopped by the deputies. Appellant testified that no one from the black truck ever came to the Buick, he never showed the informant a kilogram of cocaine, and he did not know that the cocaine was in the car.

The charge instructed the jury that the testimony of Ibarra, the accomplice, must be corroborated by "other evidence." *See* TEX.CODE CRIM. PROC. ANN. art. 38.14 (Ver-

non 2005). However, the charge did not instruct the jury that the informant's testimony must be corroborated. *See id.* art. 38.141 (Vernon 2005).

### Sufficiency of the Evidence

Appellant challenges the sufficiency of the evidence to support the conviction for possession with intent to deliver cocaine. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (f).

### A. Applicable Law to Establish Offense of Possession with Intent to Deliver

■ A person commits the offense of possession with intent to deliver a controlled substance if he knowingly possesses with intent to deliver a controlled substance listed in Penalty Group one, which includes cocaine. *See id.* § 481.112(a), (f); *id.* § 481.102(D) (Vernon Supp.2006) (listing cocaine in Penalty Group 1). In a possession-with-intent-to-deliver case, the State must prove that the defendant (1) exercised care, custody, control, or management over the controlled substance; (2) intended to deliver the controlled substance to another; and (3) knew that the substance in his possession was a controlled substance. *Id.* §§ 481.002(38), 481.112(a) (Vernon 2003 & Supp.2006); *Nhem v. State,* 129 S.W.3d 696, 699 (Tex. App.-Houston [1st Dist.] 2004, no pet.). Possession is voluntary "if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control." TEX. PEN.CODE ANN. § 6.01(b) (Vernon 2003). "'Deliver' means to transfer, actually or constructively, to another a controlled substance ..., regardless of whether there is an agency relationship. The term includes offering to sell a controlled substance...." TEX. HEALTH & SAFETY CODE ANN. § 481.002(8) (Vernon Supp.2006). These elements may be established by either direct or circumstantial evidence. *Poindexter v. State,* 153 S.W.3d 402, 405–06 (Tex.Crim.App.2005) (quoting *Brown v. State,* 911 S.W.2d 744, 747 (Tex.Crim.App.1995)).

■ When a defendant is not in exclusive possession of the place where the controlled substance is found, the State must prove additional independent facts and circumstances that affirmatively link the defendant to the contraband in such a way that it can be concluded that the defendant had knowledge of the contraband and exercised control over it. *Roberson v. State,* 80 S.W.3d 730, 735 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd). An affirmative link generates a reasonable inference that the defendant knew of the contraband's existence and exercised control over it. *Johnson v. State,* 658 S.W.2d 623, 627 (Tex.Crim.App.1983), *overruled on other grounds by Woods v. State,* 956 S.W.2d 33, 36, n. 3, 39 (Tex.Crim.App. 1997); *Roberson,* 80 S.W.3d at 735. Courts have identified a non-exhaustive list of factors that may help to show an affirmative link to controlled substances. *Roberson,* 80 S.W.3d at 735 n. 2.[1] Each

---

1. Among the factors this Court has listed are whether the drugs were (1) in plain view; (2) conveniently accessible to the accused; (3) in a place owned by the accused; (4) in a car driven by the accused; (5) found on the same side of the car as the accused; or (6) found in an enclosed space; and whether (7) the drug's odor was present; (8) drug paraphernalia was in view of or found on the accused; (9) the accused's conduct indicated a consciousness of guilt; (10) the accused had a special relationship to the drug; (11) the car's occupants gave conflicting statements about relevant matters; (12) the physical condition of the accused indicated recent consumption of the drug found in the car; and (13) affirmative statements connected the accused to the drug.

*Roberson v. State,* 80 S.W.3d 730, 735 n. 2 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd).

case is examined on its own facts, and a factor that contributes to the sufficiency of the evidence in one case may be of little or no value in a different case. *Id.* at 736. It is not the number of affirmative links present that is important, but rather the "logical force" that they create to prove that the defendant committed the crime. *Id.* at 735.

## B. Corroboration of Testimony by Accomplice and Informant

■ In appellant's first issue, he contends that the evidence is legally insufficient to support the conviction because the State relies upon testimony from an informant and from an accomplice, which must be corroborated by "other evidence," and the State fails to "produce sufficient corroboration as required by articles 38.14 and 38.141 of the Texas Code of Criminal Procedure." Here, the State's evidence includes testimony by an accomplice and by an informant, and thus each of these witness's testimony requires corroboration under the Code of Criminal Procedure. *See* TEX.CODE CRIM. PROC. ANN. arts. 38.14, 38.141.

Article 38.14 states, "A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." *Id.* art. 38.14. Similar to the accomplice evidence rule, article 38.141, which took effect on September 1, 2001, requires other evidence that tends to connect the defendant to the offense when an informant's testimony is used to convict the defendant. *See id.* art. 38.141(a)-(b). Article 38.141 states,

A defendant may not be convicted of an offense under Chapter 481, Health and Safety Code, on the testimony of a person who is not a licensed peace officer or a special investigator but who is acting covertly on behalf of a law enforcement agency or under the color of law enforcement unless the testimony is corroborated by other evidence tending to connect the defendant with the offense committed.... Corroboration is not sufficient for the purposes of this article if the corroboration only shows the commission of the offense.

*Id.*

■ We look to case law regarding article 38.14, which pertains to accomplices, when applying article 38.141, which pertains to non-police officers, because of the similarity in the corroboration requirements in the two rules. *Torres v. State,* 137 S.W.3d 191, 195–96 (Tex.App.-Houston [1st Dist.] 2004, no pet.). To determine the sufficiency of the corroboration, we must eliminate the in-court, live testimony of the witness who requires corroboration and determine if some other evidence tends to connect appellant to the offense. *Id.* at 196; *Cantelon v. State,* 85 S.W.3d 457, 461 (Tex.App.-Austin 2002, no pet.). We view the corroborating evidence in the light most favorable to the finding of guilt. *Torres,* 137 S.W.3d at 196; *Cantelon,* 85 S.W.3d at 461. The corroborating evidence does not need to be in itself sufficient to establish guilt beyond a reasonable doubt. *Dowthitt v. State,* 931 S.W.2d 244, 249 (Tex.Crim.App.1996). Additionally, the corroborating evidence need not directly link the accused to the commission of the offense. *Id.* Evidence of the presence of the accused in the company of the accomplice or informant, coupled with other suspicious circumstances, may tend to connect the accused to the offense. *See id.* Even apparently insignificant incriminating circumstances may sometimes afford satisfactory evidence of corroboration. *Id.* But an accused's mere presence in the company of the accomplice or the informant before, during, and after the commis-

sion of the offense is insufficient by itself to corroborate testimony. *See id.*

Excluding the testimony of the accomplice Ibarra and the informant, the State presented the following evidence:

- The undercover surveillance officer testified that he observed the informant talking with the people in the white Buick for about five minutes before the informant got back into his car and everybody left the Conoco station.
- The undercover surveillance officer instructed a marked police car to stop the Buick and check for drugs.
- Deputy Nations testified that, as he was approaching the rear of the Buick, it was rocking back and forth and appellant was "tugging and pulling on the rear seat where he was sitting."
- Deputy Willis saw appellant lift the seat and put something underneath it.
- Deputy Nations and Deputy Willis pulled the three men out of the car individually and found a loaded revolver and cocaine.
- Deputy Nations found the cocaine under appellant's seat.

The evidence from sources other than the informant and the accomplice tends to connect appellant to the cocaine, which was found by police officers in a place easily accessible to appellant, on the same side of the car as appellant, and in an area where appellant was seen reaching. We have not used the informant's testimony to corroborate the accomplice's testimony and vice versa because the evidence outside their testimony is sufficient to meet the corroboration requirements of articles 38.14 and 38.141 of the Code of Criminal Procedure. *See* TEX.CODE CRIM. PROC. ANN. arts. 38.14, 38.141. We express no opinion on whether it is proper to use an informant's testimony to corroborate the accomplice's testimony and vice versa. *But see Patterson v. State*, 204 S.W.3d 852, 859 (Tex.App.-Corpus Christi 2006, pet. ref'd) (holding that informant's testimony may not be used to corroborate accomplice's testimony and vice versa). We hold the evidence is sufficient to meet the corroboration requirements of articles 38.14 and 38.141 of the Code of Criminal Procedure. *See* TEX.CODE CRIM. PROC. ANN. arts. 38.14, 38.141.

We overrule appellant's first issue.[2]

## C. Factual Sufficiency of the Evidence

■ In appellant's second issue, he contends the evidence is factually insufficient to support the jury's verdict. When conducting a factual sufficiency review, we view all of the evidence in a neutral light. *Ladd v. State*, 3 S.W.3d 547, 557 (Tex. Crim.App.1999). A challenge to the sufficiency of the corroboration is not the same as a challenge of the sufficiency of the evidence to support the verdict. *Torres*, 137 S.W.3d at 196; *see also Cantelon*, 85 S.W.3d at 460 (citing *Cathey v. State*, 992 S.W.2d 460, 462–63 (Tex.Crim.App.1999) (applying accomplice-witness rule)). In a factual sufficiency review, we view all the

---

**2.** Although his first issue focuses on the corroboration requirements in the Code of Criminal Procedure, appellant at times cites to the legal sufficiency standard in *Jackson*, which requires that we consider the entire trial record to determine whether, viewing the evidence in the light most favorable to the verdict, a rational jury could have found the accused guilty of all essential elements of the offense beyond a reasonable doubt. *See Jack-son v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *King v. State*, 29 S.W.3d 556, 562 (Tex.Crim.App. 2000). A *Jackson* legal sufficiency analysis is different from a corroboration analysis under the Code of Criminal Procedure. *Utomi v. State*, No. 243 S.W.3d 75, 80 (Tex.App.-Houston [1st Dist.] 2007, pet. filed) (citing *Cathey v. State*, 992 S.W.2d 460, 462–63 (Tex.Crim. App.1999)).

evidence in the record, including testimony from the accomplice and informant. *See Utomi v. State,* 243 S.W.3d 75, 80 (Tex. App.-Houston [1st Dist.] 2007, pet. filed) (citing *Simmons v. State,* 205 S.W.3d 65, 71 (Tex.App.-Fort Worth 2006, no pet.)). We do not eliminate the testimony of an informant or an accomplice when analyzing the factual sufficiency of the evidence as a whole. *Id.*

■ We will set the verdict aside for factual insufficiency of the evidence only if (1) the evidence is so weak that the verdict is clearly wrong and manifestly unjust or (2) the verdict is against the great weight and preponderance of the evidence. *Johnson v. State,* 23 S.W.3d 1, 11 (Tex.Crim. App.2000). Under the first prong of *Johnson,* we cannot conclude that a conviction is "clearly wrong" or "manifestly unjust" simply because, on the quantum of evidence admitted, we would have voted to acquit had we been on the jury. *Watson v. State,* 204 S.W.3d 404, 417 (Tex.Crim. App.2006). Under the second prong of *Johnson,* we cannot declare that a conflict in the evidence justifies a new trial simply because we disagree with the jury's resolution of that conflict. *Id.* Before finding that evidence is factually insufficient to support a verdict under the second prong of *Johnson,* we must be able to say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the jury's verdict. *Id.* In conducting a factual sufficiency review, we must also discuss the evidence that, according to the appellant, most undermines the jury's verdict. *See Sims v.*

*State,* 99 S.W.3d 600, 603 (Tex.Crim.App. 2003). The jury is in the best position to evaluate the credibility of witnesses, and we are required by the factual sufficiency review to afford "due deference" to the jury's determinations. *Marshall v. State,* 210 S.W.3d 618, 625 (Tex.Crim.App.2006).[3]

Appellant asserts that a rational jury could not have found appellant guilty because: (1) it was Ibarra's Buick that was "rigged" to "stash" drugs, (2) Olivarez was better friends with Ibarra than appellant, which would make Olivarez the backup for Ibarra rather than appellant, (3) drug dealers carry guns and appellant did not have a gun, (4) no evidence was presented to show appellant was in the "drug culture," (5) appellant was not "living an extravagant life with fancy cars and a big house," (6) the cocaine was not in appellant's plain view, (7) appellant would be crazy to perform a drug deal 400 feet from his own home, (8) there was no video or audio confirmations of the informant and accomplice testimony, and (9) the "jury had a difficult time reaching a verdict." Although appellant points to factors that weigh against a finding of guilt, other factors point to his guilt. Appellant was seen by officers pulling on the back seat attempting to hide something under his seat, where the cocaine was found. Additionally, the informant and accomplice each testified about appellant's role in attempting to sell the cocaine. We conclude that, viewing the evidence neutrally, the evidence is not so weak as to render the verdict clearly wrong and manifestly un-

---

**3.** The jury charge did not require the informant's testimony to be corroborated, but we must determine the sufficiency of the evidence to establish the elements of the offense based on a hypothetically correct jury charge. *See Malik v. State,* 953 S.W.2d 234, 239–40 (Tex.Crim.App.1997); *Sisk v. State,* 74 S.W.3d 893, 897 (Tex.App.-Fort Worth 2002, no pet.) (applying *Malik* to legal-sufficiency challenge in stalking case). The hypothetically correct jury charge sets out the law, as authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Malik,* 953 S.W.2d at 240.

just, and the verdict is not against the great weight and preponderance of the evidence. *See Johnson*, 23 S.W.3d at 11. We hold that the evidence is factually sufficient to sustain appellant's conviction for possession with intent to deliver.

We overrule appellant's second issue.

### Charge Error

In his third issue, appellant contends that he was egregiously harmed by the trial court's erroneous failure to instruct the jury that an informant's testimony must be corroborated before it may be relied on to convict the appellant.

### A. Error

In determining whether there is reversible error due to an erroneous jury charge, we first decide whether error exists, and if error exists, then we determine whether appellant was harmed. *Middleton v. State*, 125 S.W.3d 450, 453 (Tex.Crim.App.2003). A charge must distinctly set forth the law applicable to the case. *See* Tex.Code Crim. Proc. Ann. art. 36.14 (Vernon 2007). The law requires that testimony from a non-police officer, such as an informant, may not be used to convict a defendant of a narcotics offense unless it is "corroborated by other evidence tending to connect the defendant with the offense committed." *See* Tex. Code.Crim. Proc. Ann. art. 38.141; *see also* Tex. Health & Safety Code Ann. § 481.112(a), (f). Because the informant's testimony was presented as part of the State's evidence used to convict appellant, the Code of Criminal Procedure requires that the informant's testimony be corroborated. *See id.* The jury charge, however, did not include the instruction, nor did the appellant's attorney request the instruction. The failure to instruct the jury on the corroboration requirement was error. *See Simmons*, 205 S.W.3d at 77 (holding that failure to instruct jury of corroboration requirement for informant testimony

under article 38.141 was error); *see also Herron v. State*, 86 S.W.3d 621, 631–32 (Tex.Crim.App.2002) (holding that failure to instruct jury of corroboration requirement for accomplice testimony under article 38.14 was error). As with corroboration required under the accomplice witness rule, the trial court must instruct the jury under article 38.141 as the law applicable to the case, regardless of whether appellant requests the instruction when an informant's testimony is used by the State in its efforts to obtain a conviction. *See Herron*, 86 S.W.3d at 632; *Simmons*, 205 S.W.3d at 77; *see also* Tex.Code.Crim. Proc. Ann. art. 38.141.

### B. Harm

Having determined that the trial court erred by failing to give the instruction, we must next determine whether appellant was harmed by the error. A complaint that the trial court erred by failing to instruct the jury on the corroboration requirement for informant testimony is reviewed under two different standards for determining harm from the error, depending on whether the defendant preserved error. *See Herron*, 86 S.W.3d at 632 (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1985)(op. on reh'g)). If the defendant properly preserves error by bringing to the attention of the trial court the omission of the corroboration instruction, then we review the error to see if "some harm" resulted from the omission of the instruction. *Id.* However, if the defendant fails to request the instruction or object to its omission, the defendant has failed to preserve error and our review focuses on whether the defendant suffered "egregious harm." *Id.*; *Simmons*, 205 S.W.3d at 77. Under the "egregious harm" standard, we review alleged charge error by considering (1) the entirety of the charge itself, (2) the evidence, (3) the arguments of counsel, and

(4) other relevant information revealed by the record. *See Sanchez v. State,* 209 S.W.3d 117, 121 (Tex.Crim.App.2006); *Almanza,* 686 S.W.2d at 171.

▮ In assessing whether a defendant has been egregiously harmed by the omission of an instruction that tells the jury that testimony must be corroborated, the error is generally harmless unless the corroborating evidence is "so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive." *Herron,* 86 S.W.3d at 632 (applying egregious harm to failure to give accomplice witness instruction). In reviewing the strength of the corroborating evidence testimony, we "examine (1) its reliability or believability and (2) the strength of its tendency to connect the defendant to the crime." *Id.*

Here, appellant concedes that he did not preserve error and the proper review is under the egregious harm standard. We therefore examine (1) the charge, (2) the evidence, (3) the jury arguments, and (4) any other pertinent matters.

### 1. The Charge

Although the jury charge properly instructs that appellant cannot be convicted unless the accomplice's testimony is corroborated, *see* TEX.CODE.CRIM. PROC. ANN. art. 38.14, the charge erroneously fails to require corroboration of the informant's testimony. *See Herron,* 86 S.W.3d at 632; *Simmons,* 205 S.W.3d at 77. The inclusion of the jury charge specifically requiring corroboration of an accomplice's testimony likely misled the jury into believing that the informant's testimony need not be corroborated because the charge did not contain an instruction requiring corroboration of the informant's testimony.

### 2. The Evidence

Although appellant denied knowledge of the cocaine in the car, he was seen by Deputy Nations "tugging and pulling on the rear seat where he was sitting." Deputy Willis saw appellant lift the seat and put something underneath it. Deputy Nations found the cocaine under appellant's seat. The testimony of the officers negates the harm because the evidence renders the State's case convincing and persuasive without the testimony by the informant and the accomplice. *See Herron,* 86 S.W.3d at 632 (stating that if nonaccomplice testimony exists that tends to connect defendant to offense, it "can render harmless a failure to submit an accomplice witness instruction"); *Simmons,* 205 S.W.3d at 77 (applying *Herron* to informant testimony).

### 3. The Arguments of Counsel

The prosecutor told the jury that the informant's testimony does not have to be corroborated. The prosecutor, while instructing the jury on the law requiring an accomplice's testimony to be corroborated by other evidence, stated "[i]f you want to look at what the ... informant told you, then you don't even have to worry about this because this does not apply to [the informant]."

Appellant's counsel told the jury that the informant's testimony was unreliable and that the informant created most of the story. Appellant's counsel never told the jury that an informant's testimony must be corroborated before it may be believed. Instead, counsel told the jury not to believe the informant. Although appellant's trial counsel was silent regarding the law requiring corroboration of an informant's testimony, the State's jury argument affirmatively misstated the law.

### 4. The Record

The record shows that the jury likely believed that the informant's testimony did not require corroboration. The trial court told the jury that they could convict based solely on the testimony of one witness.

While this is generally correct for testimony that does not require corroboration, the jury could have mistaken the general statement by believing that the informant's testimony alone did not require corroboration. This most likely occurred because the State instructed the venire panel that an accomplice's testimony must be corroborated, but failed to give the same instruction as to an informant's testimony. Appellant's counsel also did not instruct the jury that the law required that an informant's testimony be corroborated. The statements during voir dire by the trial court, the State's attorney, and appellant's attorney, in combination with the charge that accomplice evidence must be corroborated and the absence of a charge that the informant's testimony must be corroborated, likely misled the jury that the informant's testimony did not require corroboration.

In contrast, the record also supports a conviction without the informant's testimony. While the informant tipped off the police to a potential drug sale, the police independently recovered the cocaine from beneath appellant's seat, after the informant had left the scene. In addition, the police observed appellant lift the back seat in the area in which they discovered the cocaine.

### 5. Conclusion

Viewing the entire record, we conclude that the appellant was not egregiously harmed by the error. Because the independent testimony from the police officers is alone sufficient to connect appellant to the cocaine, appellant was not egregiously harmed by the lack of an instruction regarding the corroboration requirement for the informant's testimony. We conclude that appellant was not egregiously harmed by the omitted charge because the corroborating evidence is not so unconvincing in fact as to render the State's overall case for conviction clearly and significantly less persuasive. *See Herron,* 86 S.W.3d at 632 (holding defendant was not harmed under lower "some harm" standard "where there is no such basis in the record for doubting the reliability of the remaining . . . items of non-accomplice evidence"); *see also Saunders,* 817 S.W.2d at 692 (holding defendant egregiously harmed because much of defendant's favorable evidence was uncontradicted and corroborating evidence was weak and had persuasive innocent explanations). We hold that appellant was not egregiously harmed by the error.

We overrule appellant's third issue.

### Conclusion

We affirm the judgment of the trial court.