Opinion issued January 22, 2009







 
 


    


In The
Court of Appeals
For The
First District of Texas
____________

NO. 01-07-00895-CR
____________

DYRONE KEVIN COOPER, Appellant 

V. 

THE STATE OF TEXAS, Appellee




On Appeal from the 248th District Court
Harris County, Texas
Trial Court Cause No. 1101643




MEMORANDUM OPINION

          A jury convicted appellant, Dyrone Kevin Cooper, of murder


 and the court
assessed punishment at 10 years in prison. We determine (1) whether the trial court
erred in not giving the jury an instruction to determine whether Raymond Ray was an
accomplice witness as a matter of fact and, if so, whether egregious harm is shown;
and (2) whether Ray’s testimony was required to be corroborated by evidence tending
to connect appellant with the murder.


 We also determine whether the evidence is
factually sufficient to support the murder conviction. We affirm. 
Facts
          On April 20, 2006, Robert Jackson was shot while walking in the Luxor
Apartment complex. The shooter wore a black shirt, black pants, and a red or orange
ski mask. Robert King, Jackson’s father, saw the shooting and later identified
appellant as the person who shot his son four times in the head and neck at close
range. Immediately after the shooting, appellant fled on foot, with King chasing him. 
During the chase, appellant pulled the ski mask off and turned to look behind him,
giving King about five or six seconds to see appellant’s face. King noticed that
appellant wore his hair in dreadlocks in three ponytails with rubber bands, a hairstyle
which appellant was known to affect in April of 2006. During the chase, appellant
and King ran into a group of people in the pool area where King lost sight of
appellant. Spotting a man wearing a black shirt, King began chasing him, mistaking
him for appellant. The man ran into an apartment. King told the police at the scene
that he was 100 percent positive that the man who shot his son ran into that specific
apartment, but later realized that the man in the apartment was not the one who shot
his son. At trial, King identified appellant as the shooter. 
          Appellant had borrowed a gun from Raymond Ray about 30 minutes before the
shooting, without indicating what he intended to do with the gun. After Ray gave
appellant (whom Ray identified by the nickname “D”) the gun, a young man walked
by, and appellant shouted, “There he go, there he go right there.” At the time,
appellant was wearing a black shirt and black pants. Appellant, accompanied by his
friend, Marty, then walked off in one direction while Ray walked off in a different
direction. 
          Shortly afterwards, Ray saw someone with a black shirt and pants and wearing
a red mask run through the driveway and shoot the young man by the stairwell, first
in the head, and then several more times after the man fell to the ground. Ray thought
the masked man appeared to be appellant. The shooter fled, and, initially, so did Ray.
Ray later turned around and went back to the scene, where he encountered the police,
who took him in for questioning. Ray initially lied to the police, telling the detective
that he did not know who had done the shooting. Later, he told the police that he had
been at the scene, had witnessed the shooting, and knew the identity of the shooter. 
Ray did not tell the police that he had given appellant the gun used in the shooting,
but he told a prosecutor this fact the day before his testimony. In court, Ray
identified appellant as the shooter.


 Also in the area that night was Terrance Perrilloux, who also knew appellant
as “D.” Perrilloux had met appellant at the Luxor Apartments in January 2006; they
were both part of a group of former New Orleans residents who “hung together.” The
night of the shooting, Perrilloux was “hanging out” at the Luxor Apartments after a
day of selling drugs. He heard gunshots ring out, and then, within four minutes, he
saw appellant, appellant’s de-facto brother-in-law Marty, and appellant’s cousin,
Tuna, running across the street. Marty eventually ran towards Perrilloux, pulled out
a gun, unloaded the shells, put them in a bag, threw the bag onto a roof, and put the
gun back in his pocket. Perrilloux called Crime Stoppers two days later and gave
them the name “D.” 
          Perrilloux did not see appellant again at the apartment complex until January
2007, when appellant showed the murder weapon to Perrilloux and stated that it was
the gun “he busted the dude up with.” Appellant boasted that he was now able to walk
over to the part of the apartment complex where people from Houston “hung out”
because he had received respect as a result of what he had done; appellant told
Perrilloux that he felt like “he was the king now.” According to Perrilloux, “just
about everyone from New Orleans” knew that appellant had shot Jackson. Perrilloux
later helped the police recover the gun from Marty’s brother. Perrilloux received a
reward of $2000 from Crime Stoppers for the information he provided in the case. 
          At trial, appellant’s mother, grandmother, and two sisters testified that
appellant was living with his mother in New Orleans in April 2006 and, on the day
of the shooting, he had been at a sister’s birthday party at his mother’s house. One
of his sisters had evacuated to Houston earlier because of Hurricane Katrina, but she
stated that appellant and his mother had stayed behind in Louisiana. Appellant’s
mother and one of his sisters testified that appellant did not move to Houston until
June 2006. 
          Appellant’s mother’s neighbor in New Orleans, Albert Robertson, testified that
he had left appellant at the April 20th party around noon, after work. Robertson
stated that he had employed appellant during the months of March, April, and May
of 2006 and had paid him on April 7, 2006, April 21, 2006, and May 1, 2006.
Examination of Robertson’s records revealed that the checks to appellant did not
appear in sequential order in relation to other checks in the same account and did not
appear in the same portion of Robertson’s business records as other records from
those same months. Instead of being noted in the portion of the records containing
other checks written in March, April or May of 2006, the notations recording checks
to appellant followed a section of the records dated August 2006. Review of the
checkbook itself revealed that the checkbook first contained check numbers 1037
through 1039, dated in August of 2006, followed by blank checks, and then contained
the checks written to appellant, which commenced with check number 1052, but were
dated March, April and May of 2006. Robertson explained this discrepancy by
stating that he was sloppy with his bookkeeping records, did not keep a sequential
checkbook, but did have a special section for appellant alone, which was in sequential
order. Robinson testified that he did not have a special section for any other
employee. Robertson did not bring any bank records or cancelled checks to trial that
would prove that he paid appellant on the dates stated on the check register.
           Appellant also testified at trial. He claimed that he never stayed in Houston
before June 2006. However, during direct examination, appellant stated that he quit
working for Mr. Robertson in May or June because he had saved enough money to
“come back” to Houston. Appellant used the term “came back” several times during
his testimony when referring to his June 2006 move to Houston, but he later
explained that he meant that he was trying “come to Houston with money.” Appellant 
denied killing Jackson or making any incriminating statements to Perrilloux. 
 

Accomplice Witness Testimony
          In his first issue, appellant argues that the evidence was insufficient to
corroborate the testimony of Raymond Ray as an accomplice witness as a matter of
fact, as required by article 38.14 of the Texas Code of Criminal Procedure. In his
third issue, appellant argues that the trial court erred by failing to submit the factual
issue of Raymond Ray’s status as an accomplice as a matter of fact to the jury. 
          At trial, after Ray testified that he gave appellant the gun, defense counsel,
outside of the presence of the jury, suggested to the judge that Ray had just admitted
to being an accomplice and might need an attorney. The judge responded that she did
not believe that Ray had yet said anything inculpating himself. No further discussion
on this subject occurred and no accomplice witness instruction was requested by
either party. At the charge conference, appellant’s counsel stated that he had “no
objection” to the jury charge. 
          Appellant acknowledges that he made no request for an accomplice witness 
instruction. Therefore, any jury charge error is reversible only if egregious harm is
shown.


 See Herron v. State, 86 S.W.3d 621, 632 (Tex. Crim. App. 2002) (holding
that where accused has failed to preserve jury charge error, he must demonstrate
egregious harm). In order to be entitled to a reversal, an appellant must have suffered
“actual, rather than theoretical, harm” and the error must be so egregious, and have
created such harm, that the appellant was denied a fair trial. Warner v. State, 245
S.W.3d 458, 461 (Tex. Crim. App. 2008); Almanza v. State, 686 S.W.2d 157, 171
(Tex. Crim. App. 1984). “Errors that result in egregious harm are those that affect the
very basis of the case, deprive the defendant of a valuable right, or vitally affect a
defensive theory.” Warner, 245 S.W.3d at 461–62 (quotations and citations omitted).
          “An accomplice is an individual who participates with a defendant before,
during, or after the commission of the crime and acts with the requisite culpable
mental state.” Cocke v. State, 201 S.W.3d 744, 748 (Tex. Crim. App. 2006). In
Texas, a conviction cannot be obtained upon the testimony of an accomplice unless
it is corroborated by other evidence tending to connect the defendant to the offense. 
See Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon 2005). “A witness may be an
accomplice either as a matter of law or as a matter of fact; the evidence in a case
determines what jury instruction, if any, needs to be given.” Cocke, 201 S.W.3d at
747. An individual is an accomplice as a matter of law if he, like the defendant, could
be prosecuted for the offense or a lesser-included offense. Id. at 748. If a witness is
an accomplice as a matter of law, the trial court is required to provide an accomplice
witness instruction to the jury that informs the jury that it cannot use the accomplice’s
testimony to convict the accused unless there also exists some non-accomplice
evidence tending to connect the accused to the offense. Herron, 86 S.W.3d at 631,
632. If the evidence is conflicting and it is unclear whether a witness is an
accomplice, the trial judge should allow the jury to decide whether the witness “is an
accomplice witness as a matter of fact under instructions defining the term
‘accomplice.’” Druery v. State, 225 S.W.3d 491, 498–99 (Tex. Crim. App. 2007). 
          However, even where there is error by failure to submit the issue of a witness’s
status as an accomplice of fact to the jury, such failure is generally harmless where
there is other evidence “tending to connect” the defendant to the crime, unless the
corroborating evidence is “so unconvincing in fact as to render the State’s overall
case for conviction clearly and significantly less persuasive.” See Herron, 86 S.W.3d
at 632 (citation omitted); Pena v. State, 251 S.W.3d 601, 612 (Tex. App.—Houston
[1st Dist.] 2007, pet. ref’d) (holding that there was no egregious harm from omitted
accomplice instruction because corroborating testimony from police officers alone
was sufficient to connect accused to crime and such evidence was not so
unconvincing as to render State’s overall case for conviction clearly and significantly
less persuasive). As noted by the Herron court:
The [article 38.14] instruction does not say that the jury should be
skeptical of accomplice witness testimony. Nor does it provide for the
jury to give less weight to such testimony than to other evidence. The
instruction merely informs the jury that it cannot use the accomplice
witness testimony unless there is also some non-accomplice evidence
[tending to] connec[t] the defendant to the offense. Once it is
determined that such non-accomplice testimony exists, the purpose of
the instruction is fulfilled, and the instruction plays no further role in the
factfinder’s decision-making. Therefore, non-accomplice evidence can
render harmless a failure to submit an accomplice witness instruction by
fulfilling the purpose an accomplice witness instruction is designed to
serve. 
 
Herron, 86 S.W.3d at 632. 
          The non-accomplice testimony of Robert King and Terrence Perrilloux was 
evidence “tending to connect” appellant to the murder, and this corroborating
evidence was not “so unconvincing in fact as to render the State’s overall case for
conviction clearly and significantly less persuasive.” See Tex. Code Crim. Proc.
Ann. art. 38.14 (Vernon 2005); Herron, 86 S.W.3d at 632 (holding that failure to
submit issue of witness’s status as accomplice is generally harmless when there is
other evidence “tending to connect” defendant to crime, unless corroborating
evidence is “so unconvincing in fact as to render State’s overall case for conviction
clearly and significantly less persuasive”). The evidence was sufficient to corroborate
the testimony of Raymond Ray as an accomplice witness as a matter of fact, as
required by article 38.14 of the Texas Code of Criminal Procedure, and therefore it
fulfilled the purpose the instruction was designed to serve. Accordingly, even if Ray
had been an accomplice as a matter of fact, which question we do not decide, we hold
that there was some non-accomplice evidence at trial which “tend[ed] to connect”
appellant to the crime and was sufficient to corroborate Ray’s testimony under article
38.14. We hold that the trial court’s failure to submit a factual issue to the jury on
whether Ray was an accomplice, if erroneous, was harmless, and so egregious harm
by any such charge error is not shown. See Herron, 86 S.W.3d at 632; Pena, 251
S.W.3d at 612. 
          We overrule appellant’s first and third issues. 
 Factual Sufficiency of the Evidence
          In his second issue, appellant contends that the evidence in this case was
factually insufficient to establish that he shot the decedent. Appellant asserts that (1)
the State’s evidence was too weak, considered by itself, to support the finding of guilt
beyond a reasonable doubt, and (2) the contrary evidence was so strong that his guilt
could not be proved beyond a reasonable doubt. Specifically, he argues that the
State’s evidence from witnesses Robert King, Raymond Ray, and Terrance Perrilloux,
was “undermined and impeached” because (1) King initially identified the wrong
person and told the police he saw only the back of the shooter’s neck, but at trial King
said that he saw the shooter’s face; (2) Ray’s testimony was “inherently suspect”
because he admitted lying to the police, admitted smoking marihuana on the night of
the murder, admitted that the murder weapon was his, and testified in court “in an
orange jumpsuit with a parole certificate sticking out of his pocket”; and (3)
Perrilloux’s testimony was discredited because he received $2000 from Crime
stoppers as a result of his involvement in the case. Appellant further argues that, by
contrast, his alibi witnesses “were not impeached with prior lies and criminal
convictions.” 
          In reviewing a factual sufficiency claim, we consider all the evidence in a
neutral light and determine if the evidence supporting the conviction is so weak that
the fact-finder’s determination is clearly wrong and manifestly unjust or whether
conflicting evidence so greatly outweighs the evidence supporting the conviction that
the fact-finder’s determination is manifestly unjust. Watson v. State, 204 S.W.3d 404, 
414–15, 417 (Tex. Crim. App. 2006). Before we may reverse under the second
ground, we must determine, with some objective basis in the record, that the great
weight and preponderance of the evidence, although legally sufficient, contradicts the
verdict. Watson, 204 S.W.3d at 417.
          In conducting this review, we must be cognizant of the fact that a jury has
already passed on the facts and so we must give due deference to the jury’s
determinations. Lancon v. State, 253 S.W.3d 699, 704–05 (Tex. Crim. App. 2008). 
Thus, while we may disagree with the factfinder, we must afford the factfinder the
proper deference in order to avoid substituting our judgment for that of the jury. Id. 
at 705. The jury, being in the best position to judge the credibility of the witnesses,
is the sole judge of the weight to be given contradictory evidence and we should
afford almost complete deference to the jury’s decision when it is based on an
evaluation of credibility. Id. 
          Appellant’s arguments under this issue are entirely predicated on an evaluation
of the credibility of the witnesses and the determination of the weight to be given to
each witness’s testimony. The jury, as the sole judge of the witnesses’ credibility and
the weight to be given the testimony, could choose which testimony to believe and
which to disbelieve. See id. at 707. It apparently chose to believe the State’s
witnesses and disbelieve appellant and his witnesses. 
          Giving the jury’s determinations of credibility and weight due deference, we
conclude that the record does not clearly reveal that the evidence was so weak as to
render the jury’s determination clearly wrong and manifestly unjust, nor that the
jury’s determination was so contrary to the overwhelming weight of the evidence so
as to be clearly wrong and unjust. We hold that the evidence is factually sufficient
and we overrule appellant’s second issue.     
          Conclusion
We affirm the judgment of the trial court. 

 
Tim Taft
Justice

Panel consists of Justices Taft, Keyes, and Alcala.
Do not publish. See Tex. R. App. P. 47.2(b).