Affirmed and Memorandum Opinion filed September 17,
2009.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-08-00626-CR

____________

 

WILLIE JESS TENNYSON, Appellant

 

v.

 

THE STATE OF TEXAS, Appellee

 

 



 

On Appeal from the
County Court at Law No. 2

Smith County,
Texas

Trial Court Cause
No. 002-81466-07

 



 

M E M O R
A N D U M  O P I N I O N








Following a routine traffic stop, appellant Willie Jess
Tennyson was arrested for, and later convicted of, possessing a usable quantity
of less than two ounces of marihuana in a drug-free zone.  See Tex.
Health & Safety Code Ann. '' 481.121, 481.134(f) (Vernon 2003 & Supp. 2008).  On
appeal, he contends in four issues that the marihuana discovered in four
different locations in a pickup truck he was driving should have been
suppressed as the fruits of an unlawful detention, and that the evidence is legally
and factually insufficient to demonstrate he Apossessed@ the marihuana.  We affirm appellant=s conviction.

                                                               Background

On March 3, 2006, Officer Dale Feuquay, a member of the K-9
unit of the Tyler Police Department, was patrolling a high-crime area of Tyler
while monitoring the vehicles that frequently entered and exited an apartment
complex that had been known as a focal point for narcotics trafficking. 
Feuquay decided to follow a pickup truck, which was driven by appellant, that
had left the complex.  Shortly thereafter, Feuquay saw appellant make an abrupt
right turn without signaling, a traffic violation.  See Tex. Transp.
Code Ann. ' 545.104 (Vernon 1999).  Feuquay activated his overhead lights and pulled
the truck over.

There were three individuals inside the pickup truck:
appellant was driving, his cousin, Kevin, was riding in the front passenger
seat, and their friend, Nathan, was in the back seat.  Feuquay retrieved
appellant=s driver=s license and returned to his vehicle, where he called for a backup unit,
as he commonly does, to assist him in frisking the vehicle=s occupants for weapons.  The backup
unit arrived within five minutes.

Feuquay testified his intent was to cite appellant for the
traffic violation but, before the traffic stop was complete, he decided to take
his canine partner, Magic, for a Afree-air sweep@ of the vehicle.  Magic quickly Aalerted to,@ or showed interest in, appellant=s driver-side door on the truck,
indicating the probable presence of drugs inside the vehicle.  Accordingly,
Feuquay determined he had probable cause to search the truck.  Even so, he
asked appellant, AIs it okay for me to search your vehicle?@  Appellant consented to the search.








On the driver side of the vehicle, Feuquay found a usable
amount of crumbled marihuana loose on the floorboards where appellant=s feet had been, and in the truck=s center console.  Then, on the
passenger side, he found a bag of marihuana behind the glove box, a common
hiding area for narcotics.  He also discovered bags of marihuana in the map
pocket behind the passenger seat and inside a cigarette container resting on
the back seat.  All of these drugs were within appellant=s reach.

The officers arrested all three individuals.  Because they
had twice driven within 1,000 feet of a school during the time Feuquay was
following the truck, they were charged with possessing a usable amount,
consisting of less than two ounces, of marihuana in a drug-free zone. 
Appellant pleaded Anot guilty,@ and was tried before a jury.  

During trial, appellant objected to the admission of the
evidence found during the vehicle search, claiming Feuquay had unlawfully
detained the vehicle longer than necessary to investigate the traffic
violation.  The trial court treated appellant=s objection as a motion to suppress. 
After hearing argument and reading several cases presented by both sides, the
trial court denied appellant=s motion to suppress.  The court was not asked to, and did
not, prepare written findings of fact or conclusions of law explaining the
ruling.

The jury convicted appellant of the charged offense.  The
trial court then sentenced appellant to 133 days in jail, to be served on
Sundays.  Appellant timely appealed his conviction, raising four issues.  In
his first two issues, appellant claims the evidence is legally and factually
insufficient to show that he Apossessed@ the marihuana, a requisite element of the offense. 
Appellant=s remaining two issues relate to the denial of his motion to suppress. 
There, appellant invokes the Fourth Amendment to the United States Constitution
and Article I, section 9 of the Texas Constitution in claiming that the search
of the vehicle occurred after an unreasonable detention.

                                                       Motion to Suppress








We begin with appellant=s third and fourth issues, which
arise from the denial of his motion to suppress the marihuana discovered in the
truck he was driving.  Generally, appellant contends the search of the vehicle
resulted from an unlawfully prolonged detention and therefore violated his
constitutional rights.[1]

A.        Standard
of Review

We review the trial court=s denial of a motion to suppress
under the abuse-of-discretion standard.  See Oles v. State, 993 S.W.2d
103, 106 (Tex. Crim. App. 1999).  We cannot reverse the judgment unless it
falls outside the zone of Areasonable disagreement.@  See State v. Dixon, 206 S.W.3d
587, 590 (Tex. Crim. App. 2006).  We defer almost entirely to the trial court=s determination of historical facts
supported by the record.  Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim.
App.1997).  When the trial court does not prepare explicit findings of
historical fact, as here, we review the evidence in the light most favorable to
the ruling and will assume the trial court drew implicit findings of fact from
the record as necessary to support its conclusion.  See Carmouche v. State,
10 S.W.3d 323, 327B28 (Tex. Crim. App. 2000).

We review the trial court=s application of the law of search
and seizure de novo.  Id. at 327.  Although the record does not
reflect the trial court=s legal reasoning for denying the motion to suppress, we must
affirm its ruling under any valid legal theory supported by the record.  See
State v. Steelman, 93 S.W.3d 102, 107 (Tex. Crim. App. 2002).

B.        Analysis








Because a routine traffic stop resembles a detention, it must
be reasonable under the Fourth Amendment.  Willis v. State, 192 S.W.3d
585, 591 (Tex. App.CTyler 2006, pet. ref=d) (citing Davis v. State, 947
S.W.2d 240, 244 (Tex. Crim. App. 1997)). AReasonableness@ refers to an objective standard that
examines the totality of the circumstances.  See Kothe v. State, 152
S.W.3d 54, 63 (Tex. Crim. App. 2004).   It defies  categorization under any
bright-line rules but instead depends upon the specific facts of the case.  See
id.  This standard, in the context of a traffic stop that was justified at
its inception, requires the detention to be reasonably related in scope to the
circumstances giving rise to the initial decision to stop the vehicle.  See
Davis, 947 S.W.2d at 242 (citing Terry v. Ohio, 392 U.S. 1, 19B20 (1968)).

This reasonableness standard also incorporates a temporal
component:  A[A]n investigative detention must be temporary and last no longer than is
necessary to effectuate the purpose of the stop.@  Florida v. Royer, 460 U.S.
491, 500 (1983); Kothe, 152 S.W.3d at 63.  Once the original purpose for
the stop has been completed, the officer cannot unnecessarily detain a driver
simply to conduct a fishing expedition in hopes of discovering unrelated
criminal activity.  Kothe, 152 S.W.3d at 64; Davis, 947 S.W.2d at
243.

Here, appellant concedes Feuquay had probable cause to stop
the vehicle after seeing appellant commit an apparent traffic violation.  See
Walter v. State, 28 S.W.3d 538, 542 (Tex. Crim. App. 2000); Willis,
192 S.W.3d at 590B91.  However, he argues that Feuquay could not detain him
following the conclusion of the traffic stop, which he suggests ended when he
provided his driver=s license.  We disagree, because Feuquay testified, and the
record indicates, the traffic-violation investigation was still ongoing when
the canine unit Aalerted@ to the presence of drugs inside the truck.








An officer conducting a traffic stop is not necessarily
confined by any rigid time limitations; instead, courts are to examine Awhether the police diligently pursued
a means of investigation that was likely to confirm or dispel their suspicions
quickly, during which time it was necessary to detain the defendant.@  Kothe, 152 S.W.3d at 64
(quoting United States v. Sharpe, 470 U.S. 675, 686 (1985)).  Further,
because there is no single, formulaic approach to a traffic stop, the officer
need not conduct the investigation in any particular order.  Kothe, 152
S.W.3d at 65, 66.

During a traffic stop, an officer may request information
from the driver, including identification, a valid driver=s license, vehicle registration, and
proof of financial responsibility, and may verify that information through a
computer check.  Id. at 63; Davis, 947 S.W.2d at 245 n.6; Haas
v. State, 172 S.W.3d 42, 50 (Tex. App.CWaco 2005, pet. ref=d).  These checks, which may inform
the officer of any known dangers about the person stopped, serve an important
law-enforcement purpose by aiding in officer safety.  See Kothe, 152
S.W.3d at 64 n.36.  While awaiting the results of computer checks, an officer
may lawfully continue the investigation.  See id. at 66; Willis,
192 S.W.3d at 591B92; Haas, 172 S.W.3d at 50.

Here, although appellant had provided his driver=s license to Feuquay, the record does
not indicate whether Feuquay had completed a check for outstanding warrants. 
Thus, the record does not support appellant=s contention that the
traffic-violation investigation ended when he correctly identified himself.  See
Kothe, 152 S.W.3d at 63B64 (AIt is only after this computer check is completed, and the
officer knows that this driver has a currently valid license, no outstanding
warrants, and the car is not stolen, that the traffic-stop investigation is
fully resolved.@).[2]








Nor is there any indication that Feuquay failed to diligently
pursue his investigation of appellant=s traffic violation.  See id.
at 66.  After retrieving appellant=s driver=s license, Feuquay returned to his
vehicle and, motivated by concern for his safety, requested a backup unit.  An
officer who makes a valid traffic stop may take appropriate measures to
guarantee his safety.  See Cunningham v. State, 11 S.W.3d 436, 440 (Tex.
App.CHouston [14th Dist.] 2000, no pet.). 
We note that, but for his canine companion, Feuquay was alone; by contrast,
appellant was accompanied by two other passengers, a significant fact in
adjudging Feuquay=s request for a backup unit.  See Rhodes v. State, 945
S.W.2d 115, 118 (Tex. Crim. App. 1997) (citing Maryland v. Wilson, 519
U.S. 408, 414B15 (1997)).  Thus, the record does not compel the conclusion that Feuquay
unreasonably prolonged appellant=s detention by waiting no more than
five minutes for a backup unit to arrive.  See Haas, 172 S.W.3d at 54
n.8 (holding twenty-minute wait for backup to arrive and canine sniff to begin
was not unreasonable.).[3]








Once the backup unit arrived, Feuquay promptly resumed his
investigation by asking the truck=s occupants to exit the vehicle, and
then frisking them for weapons.  See Rhodes, 945 S.W.2d at 118B19 (holding that asking passengers to
step outside vehicle is not an unreasonable violation of their Fourth Amendment
rights).  Feuquay then led Magic on a brief free-air sniff of the perimeter of
the vehicle.  See Illinois v. Caballes, 543 U.S. 405, 409 (2005) (A[T]he use of a well-trained
narcotics-detection dog . . . during a lawful traffic stop, generally does not
implicate legitimate privacy interests.@); Crockett v. State, 803
S.W.2d 308, 310 n.5 (Tex. Crim. App. 1991).  All of these events occurred
before Feuquay completed the process of writing appellant a citation for the
traffic violation.[4]  See Hart
v. State, 235 S.W.3d 858, 861B62 (Tex. App.CEastland 2007, pet. dism=d) (holding detention not
unreasonable where canine unit arrived before traffic citation had been
issued).[5]  Thus,
Feuquay testified that the traffic-violation investigation had not concluded
when Magic alerted him to the presence of drugs in the vehicle.

That fact, by itself, serves to distinguish this case from
the authorities cited by appellant.  See Wolf v. State, 137 S.W.3d 797
(Tex. App.CWaco 2004, no pet.); United States v. Jones, 234 F.3d 234 (5th
Cir. 2000); United States v. Dortch, 199 F.3d 193 (5th Cir. 1999).  In Wolf,
the Waco Court of Appeals invalidated a detention because the officer admitted
he detained the driver after the investigation of the original traffic
violation had already ended.  See Wolf, 137 S.W.3d at 801, 802.  In Jones,
the traffic-violation investigation ended when the investigating officer received
the results of the computer check and completed the warning citation, such that
continued detention was held to be unreasonable.  See Jones, 234 F.3d at
241.  Similarly, in Dortch, the  Fifth Circuit held that the
investigating officer, who had already decided not to cite the driver, could
not continue the detention for a canine sniff after receiving the results of
the computer check.  See Dortch, 199 F.3d at 198.








Here, by contrast, the record does not indicate that the
detention of appellant took longer than was necessary to effectuate the purpose
of the stop, including investigation of the traffic violation, conducting a
computer background check as necessary, and issuance of a citation for the
illegal turn.  See Davis, 947 S.W.2d at 243.  Therefore, after reviewing
the evidence in the light most favorable to the trial court=s ruling, we hold appellant was not
subjected to an unlawful detention.  Accordingly, the trial court did not abuse
its discretion by denying appellant=s motion to suppress the evidence
found during the consensual search of the vehicle.[6] 
We overrule appellant=s third and fourth issues.

                                                 Sufficiency of Evidence

In his first two issues, appellant challenges the legal and
factual sufficiency of the evidence showing that he exercised care, custody,
control or management over the marihuana, a requisite element of the offense of
unlawful possession of a controlled substance.  See Evans v. State, 202
S.W.3d 158, 161 (Tex. Crim. App. 2006); Fields v. State, 932 S.W.2d 97,
103 (Tex. App.CTyler 1996, pet. ref=d).  Because the evidence links appellant to the drugs found
in the truck he was driving, and is not so weak as to undermine confidence in
the outcome, we hold the evidence sufficiently supports the jury=s verdict.  Therefore, we will
overrule appellant=s first two issues.

A.        Standard
of Review

In a legal sufficiency review, we consider all of the
evidence in the light most favorable to the verdict and decide whether a
rational trier of fact could have found the essential elements of the offense
beyond a reasonable doubt.  Reed v. State, 158 S.W.3d 44, 46 (Tex. App.CHouston [14th Dist.] 2005, pet. ref=d).  We may not substitute our
judgment for the jury=s, and will not engage in a re-examination of the weight and
credibility of the evidence.  Id.; Brochu v. State, 927 S.W.2d
745, 750 (Tex. App.CHouston [14th Dist.] 1996, pet. ref=d).








By contrast, we review the evidence in a neutral light when
conducting a factual sufficiency review.  Reed, 158 S.W.3d at 46.  We
must set aside the verdict if (1) the proof of guilt is so obviously weak that
the verdict must be clearly wrong and manifestly unjust, or (2) the proof of
guilt, although legally sufficient, is greatly outweighed by contrary proof.  See
Vodochodsky v. State, 158 S.W.3d 502, 510 (Tex. Crim. App. 2005).  However,
because the jury is in the best position to evaluate the credibility of
witnesses, we must afford appropriate deference to its conclusions.  Pena v.
State, 251 S.W.3d 601, 609 (Tex. App.CHouston [1st Dist.] 2007, pet. ref=d).

B.        Analysis

Control over contraband need not be exclusive to the accused,
but instead may be exercised jointly by more than one person.  Hargrove v.
State, 211 S.W.3d 379, 385 (Tex. App.CSan Antonio 2006, pet. ref=d).  However, when an accused does
not exclusively control the place where the contraband is found, as here, the
State must produce additional evidence, either direct or circumstantial,
linking the accused to the contraband.[7]  Reed,
158 S.W.3d at 47.  Thus, the accused=s mere presence at the scene where
drugs were found, standing alone, is insufficient to demonstrate he exercised
actual care, custody, or control of those drugs.  Evans, 202 S.W.3d at
162.  However, the defendant=s presence or proximity, along with other evidence linking
him to the drugs, may be sufficient to establish possession beyond a reasonable
doubt.  Id.








In deciding whether the evidence links appellant to the drugs
found in the truck, we may consider several non-exclusive factors, including
whether the drugs (1) were in plain view; (2) were accessible to the accused;
(3) were found in a place owned by the accused; (4) were in a car driven by the
accused; (5) were found on the same side of the vehicle as the accused; (6)
were found in an enclosed space; or (7) emitted an odor.  See Fields,
932 S.W.2d at 103B04.  The number of factors present is not as important as
their significance in linking the accused to the crime.  Reed, 158
S.W.3d at 47.  In addition, the links need not be so overwhelming as to rule
out every other possibility except the guilt of the accused.  Id.

Application of those factors here leads us to conclude the
evidence linked appellant to the drugs found in the truck.  See Fields,
932 S.W.2d at 103B04.  Although much of the marihuana was concealed from plain
view, some loose marihuana was found strewn on the floorboards near and under
appellant=s feet.  In addition, Feuquay testified that all four of the locations
where marihuana was found were within the reach of, and accessible to,
appellant.  While the record is silent as to whether appellant owned the
truck, he was certainly the driver when the vehicle was stopped.  Then, in a
search of appellant=s side of the truck, Feuquay found a usable amount of
marihuana on the floorboards near appellant=s feet and in the truck=s center console.  Further, although
Feuquay did not perceive a discernible scent of marihuana inside the vehicle,
he testified that the physical findings indicated that marihuana had been
prepared for use either in or near appellant=s seat.

Thus, after reviewing the evidence in the light most
favorable to the verdict, we conclude the evidence sufficiently linked
appellant to the marihuana, such that a rational jury could have found the
essential elements of the offense beyond a reasonable doubt.   See Reed,
158 S.W.3d at 46.  Accordingly, we overrule appellant=s first issue.

In his second issue, which attacks the factual sufficiency of
the evidence linking him to the marihuana, appellant emphasizes the following
facts:  (1) no drugs were found on his person; (2) he did not appear to be
under the influence of drugs; (3) he did not act furtively; and (4) he did not
confess to the crime.  We have given due consideration to these facts but,
after reviewing the evidence in a neutral light, we hold the proof of guilt is
not so weak as to undermine confidence in the jury=s verdict.  See Vodochodsky,
158 S.W.3d at 510.  








In addition to the evidence discussed above, the jury heard
the testimony of appellant=s cousin, Kevin.  Although Kevin confessed that one of the
bags of marihuanaCthe one found behind the glove boxCbelonged to him, his explanation did
not account for any of the other marihuana found elsewhere in the truck.  Kevin
guessed that the other passenger, Randall, may have owned the marihuana that
was placed in the map pocket but, even were we to assume the truth of that
speculative testimony, Kevin still could not explain the presence of marihuana
under appellant=s feet or in the center console immediately adjacent to
appellant.  Kevin also testified that appellant had some level of familiarity
with the drug, because they had previously smoked marihuana together, giving
credence to Feuquay=s testimony that marihuana had been prepared for use in or
near appellant=s car seat.  Finally, although appellant did not confess to the crime,
Feuquay testified that appellant made no attempt to deny any involvement with
the marihuana found in the truck he was driving.

Therefore, we hold the evidence is also factually sufficient
to support the jury=s verdict.  Accordingly, we overrule appellant=s second issue.

                                                                CONCLUSION

Finding no merit in the issues presented, we affirm the
judgment of conviction.

 

 

 

/s/      Kent
C. Sullivan

Justice

 

 

Panel
consists of Justices Yates, Guzman, and Sullivan.

Do Not
Publish.  Tex. R. App. P. 47.2(b).









           [1] 
Appellant raises separate issues under both the Fourth Amendment to the United
States Constitution and Article I, section 9 of the Texas Constitution. 
However, in the context of temporary investigatory stops, the Court of Criminal
Appeals has held that the Texas Constitution provides no greater protections
than those found in the Fourth Amendment.  See Rhodes v. State, 945
S.W.2d 115, 117 (Tex. Crim. App. 1997).  Therefore, we will group both of
appellant=s issues and analyze them under the Fourth Amendment. 
See id.





           [2] 
See also Thompson v. State, No. 11-02-00360-CR, 2003 WL 22064077, at *2
(Tex. App.CEastland Sept. 4, 2003, no pet.) (mem. op., not
designated for publication) (ascribing significance to fact that officer had
not yet received criminal history when canine unit arrived on scene).





           [3] 
See also Tucker v. State, No. 08-02-00178-CR, 2003 WL 21711405, at *4
(Tex. App.CEl Paso  July 24, 2003, no pet.) (mem. op., not
designated for publication) (holding officer did not unreasonably prolong
detention by waiting for backup unit to arrive).  Although Feuquay testified
his request for a backup was also motivated by the desire to conduct a canine
sniff of the vehicle, that fact does not affect the legitimacy of his stated
interest in requesting backup to ensure his safety.  See Cunningham, 11
S.W.3d at 440.





           [4] 
In arguing that the traffic-violation stop was merely a pretext for a planned
narcotics investigation, appellant emphasizes the fact that he was not
ultimately cited for the traffic violation.  However, Feuquay explained that he
fully intended to write a citation for the illegal turn but decided not to Aadd insult to injury@ after appellant had been arrested for drug possession.  We defer to
the trial court on witness-credibility issues.  See State v. Ross, 32
S.W.3d 853, 856 (Tex. Crim. App. 2000).  Therefore, we will assume as true
Feuquay=s undisputed testimony that, as of the canine free-air
sniff, he had not concluded the traffic-stop investigation because he still
planned to cite appellant for the violation.





           [5] 
See also Kershaw v. State, No. 11-05-00076-CR, 2006 WL 893612, at *3
(Tex. App.CEastland Apr. 6, 2006, pet. ref=d) (mem. op., not designated for publication) (also
holding detention was not unreasonable because canine search of vehicle
occurred before traffic citation had been issued).





           [6] 
Consent to search is a well-recognized exception to the constitutional
requirements of a search warrant and probable cause.  See Schneckloth v.
Bustamonte, 412 U.S. 218, 219 (1973).  Even had appellant not consented to
the search, Magic=s alert to the presence of illegal drugs gave Feuquay
probable cause to search the vehicle.  See Josey v. State, 981 S.W.2d
831, 846 (Tex. App.CHouston [14th Dist.] 1998, pet. ref=d); Harrison v. State, 7 S.W.3d 309, 311 (Tex.
App.CHouston [1st Dist.] 1999, pet. ref=d).





           [7] 
This rule, sometimes referred to as the Aaffirmative
links@ rule, is not a separate test for legal sufficiency,
but instead represents a Ashorthand catch-phrase@ encompassing a variety of circumstances that may be unique to a
drug-possession case.  See Evans, 202 S.W.3d at 161 n.9.