COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-07-358-CR

 

 

STEPHEN RAY SMITH                                                          APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

              FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

 

                                              ------------

 

                   MEMORANDUM OPINION ON
REHEARING[1]

 

                                              ------------

After reconsidering our opinion on appellant=s motion
for rehearing, we deny the motion, but withdraw our opinion and judgment dated
December 18, 2008, and substitute the following to clarify some of the facts.

Introduction








Appellant Stephen Ray Smith appeals his
conviction for theft of property with a value between $100,000 and
$200,000.  See Tex. Penal Code
Ann. ' 31.03(e)(6)
(Vernon Supp. 2008).  In two points,
appellant contends that the trial court erred by failing to include an
accomplice witness instruction in the jury charge and that he received
ineffective assistance from his trial counsel because his counsel failed to
request such an instruction.  We affirm.

Background Facts








On December 26, 2004, Alton Kiser received a call
informing him that his travel trailer had been stolen.[2]  Less than a month later, Woody Vannatta, an
employee of Flowers Construction Company (located in Temple, Texas), arrived at
work to find that two trucks, a flatbed trailer, a generator, and various tools
and equipment were missing.  Company
employees called the police to notify them of the suspected theft of these
items.[3]  On the morning of February 3, 2005, Barbie
Don Bramlett, owner of Bramlett Implement Company (a John Deere dealership),
received a call from an employee about a break-in at his business.  When Bramlett 
arrived at the business, he discovered that the locks on his gates had
been cut.  He then noticed that a long
trailer, a black pickup truck, a customized generator, a four-wheeler vehicle,
and two John Deere Gator (Gator) utility vehicles had been stolen.

Two days later, Hood County Sheriff's Office
Sergeant Steve Smith was flagged down by Clinton Sullivan and Jackie Mitchell,
who had noticed Bramlett=s abandoned black truck in front
of a shop Mitchell owned.  After Sergeant
Smith saw that decals had been ground off of the truck, he confirmed that the
truck had been stolen.[4]  Sullivan then told Sergeant Smith that he had
seen the same black truck along with a Gator at his neighbor=s house
and that he had seen a heavy-set white man riding on the Gator.








Sergeant Smith and other officers went to the
location described by Sullivan to investigate. 
Upon arriving, Sergeant Smith noticed a Gator and several other vehicles
at the property, along with flooring, insulation, hauling trailers, and a large
amount of construction tools and materials. 
Appellant was outside working on an old house trailer when they arrived.[5]  Appellant allowed Sergeant Smith to examine
the Gator, and Sergeant Smith confirmed that it was one of the Gators that had
been stolen from Bramlett. Appellant told Sergeant Smith that he was a part
owner of the real property where the stolen items were located.

A man named Scott Elmore then left a travel
trailer, and both he and appellant refused to give the officers consent to
further search the trailer or the surrounding property.  Upon obtaining a search warrant, Sergeant
Smith searched the travel trailer and found the keys to Bramlett=s black
truck, marijuana, syringes, and a gun (which had also been reported stolen).








In September 2005, appellant was indicted for theft.  The indictment alleged that appellant
participated in a continuing course of conduct that was intended to deprive
Kiser, Vannatta, and Bramlett of more than $100,000 worth of various items of
property, including three pickup trucks, two Gators, two generators, and three
trailers.[6]  The indictment also contained an enhancement
paragraph alleging that appellant had been previously convicted of a felony
drug offense.[7]  Appellant went to trial before a jury in May
2006.  Following voir dire, appellant
pled not guilty.

At trial, Scott Elmore (who had several prior
felony convictions) testified that he had known appellant since 2004, that he
received money and methamphetamine from appellant, and that he had joined
together with appellant to purchase the real property where the various items
of stolen property were found.[8]  Elmore admitted that he stole property from
Bramlett Implements and from Flowers Construction Company and testified that
appellant had the right to use the stolen property if he desired, that
appellant encouraged him or aided him in stealing the property, that appellant
purchased most of the stolen property,[9]
and that he bought marijuana with money that appellant gave him in exchange for
the property.








After other witnesses testified and counsel
concluded their closing arguments, the trial court submitted a charge to the
jury on the theft offense.  The charge
defined theft, generally informed the jury about criminal responsibility, and
specifically instructed the jury that if it found that appellant, either acting
alone or with Elmore, participated in a scheme of conduct that intended to
deprive the owners of their property, then it was required to convict him.  However, the charge did not contain any
instruction related to accomplice witnesses or the evidentiary effect of Elmore=s
testimony, and appellant did not request any such instruction or object to its
omission.  The jury found appellant
guilty, found that the enhancement paragraph in the indictment was true, and
assessed punishment at ninety-nine years=
confinement and a $10,000 fine. 
Appellant filed this appeal. 

Accomplice Witness Instruction








In his first point, appellant asserts that the
trial court erred by failing to include an instruction in the jury charge
regarding accomplice witness testimony. 
The State concedes and we hold that Elmore was an accomplice as a matter
of law and that the trial court erred by not including such an instruction.[10]  See Cocke v. State, 201 S.W.3d 744,
748 (Tex. Crim. App. 2006), cert. denied, 127 S. Ct. 1832 (2007).  However, because appellant admits that he
made no request to the trial court that an accomplice witness instruction be
included in the jury=s charge, he must demonstrate
that he suffered egregious harm from the instruction=s
omission.  Herron v. State, 86
S.W.3d 621, 632 (Tex. Crim. App. 2002). 
In other words, appellant must show that any corroborating evidence not
linked to an accomplice=s testimony is Aso
unconvincing in fact as to render the State=s
overall case for conviction clearly and significantly less persuasive.@  Id. (quoting Saunders v. State,
817 S.W.2d 688, 692 (Tex. Crim. App. 1991)); see also Jones v. State,
195 S.W.3d 279, 289 (Tex. App.CFort
Worth 2006), aff=d, 235
S.W.3d 783 (Tex. Crim. App. 2007) (explaining that if Athe
evidence clearly warrants conviction independent of the accomplice testimony,
the trial court=s failure to instruct on the law
of accomplice testimony is not reversible error@).








A conviction Acannot
be had upon the testimony of an accomplice unless corroborated by other
evidence tending to connect the defendant with the offense committed; and the
corroboration is not sufficient if it merely shows the commission of the
offense.@  Tex. Code Crim. Proc. Ann. art. 38.14 (Vernon
2005).  In order to be an accomplice, the
person must be susceptible to prosecution for the offense with which the
accused is charged or a lesser included offense.  See Medina v. State, 7 S.W.3d 633, 641
(Tex. Crim. App. 1999), cert. denied, 529 U.S. 1102 (2000).








When evaluating the sufficiency of corroboration
evidence under the accomplice-witness rule, we Aeliminate
the accomplice testimony from consideration and then examine the remaining
portions of the record to see if there is any evidence that tends to connect
the accused with the crime.  Malone v.
State, 253 S.W.3d 253, 257 (Tex. Crim. App. 2008) (quoting Solomon v.
State, 49 S.W.3d 356, 361 (Tex. Crim. App. 2001)).  To meet the requirements of the rule, the
corroborating evidence need not prove the defendant=s guilt
beyond a reasonable doubt by itself. Malone, 253 S.W.3d at 257; Trevino
v. State, 991 S.W.2d 849, 851 (Tex. Crim. App. 1999); Gill v. State,
873 S.W.2d 45, 48 (Tex. Crim. App. 1994). 
Nor is it necessary for the corroborating evidence to directly link the
accused to the commission of the offense. 
Cathey v. State, 992 S.W.2d 460, 462 (Tex. Crim. App. 1999), cert.
denied, 528 U.S. 1082 (2000). 
Rather, the evidence must simply link the accused in some way to the
commission of the crime and show that Arational
jurors could conclude that this evidence sufficiently tended to connect [the
accused] to the offense.@ 
Malone, 253 S.W.3d at 257 (quoting Hernandez v. State, 939
S.W.2d 173, 179 (Tex. Crim. App. 1997)). 
AIndependent
evidence which generally tends to prove that an accomplice witness=s
version of events is true, rather than the version given by the defendant, is
considered corroborative, even if it concerns a mere >detail,= as
opposed to a substantive link between the defendant and commission of the
offense.@  Beathard v. State, 767 S.W.2d 423, 430
(Tex. Crim. App. 1989); see also Munoz v. State, 853 S.W.2d 558, 559
(Tex. Crim. App. 1993) (noting that A[a]pparently
insignificant incriminating circumstances may sometimes afford satisfactory
evidence of corroboration@).

The accomplice-witness rule is a statutorily
imposed sufficiency review and is not derived from federal or state
constitutional principles that define the legal and factual sufficiency
standards.  Cathey, 992 S.W.2d at
462B63.  The Atends to
connect@
standard does not present a high threshold, and we must apply the standard by
viewing corroborating evidence in the light most favorable to the verdict.  See Simmons v. State, 205 S.W.3d 65,
73 (Tex. App.CFort Worth 2006, no pet.); Cantelon
v. State, 85 S.W.3d 457, 461 (Tex. App.CAustin
2002, no pet.).

Here, appellant contends that he suffered
egregious harm because he asserts that absent Elmore=s
testimony, no evidence links appellant to the theft scheme.  The State argues that appellant did not
suffer egregious harm because Elmore=s
testimony was sufficiently corroborated by other evidence.








We conclude that the record contains sufficient
evidence apart from accomplice testimony that tends to connect appellant to the
theft scheme charged in the indictment.[11]  First, appellant jointly owned the real
property where the various items of stolen property were found and stayed
overnight at the property on a few occasions. 
Upon approaching the property to investigate, Sergeant Smith found
appellant on the property near the location of some of the stolen tools.








Next, Clinton Sullivan, who lived near the real
property where the stolen items were found, testified that he saw appellant
riding on one of the stolen Gators.  More
importantly, Sullivan stated that he saw appellant Agrinding@
Bramlett=s stolen
black truck, which he later found abandoned at Mitchell=s shop,
and also saw appellant Acutting up@ other
cars.  Sullivan correctly identified
appellant from a photo lineup as being the man he had seen grinding the truck.[12]  Sergeant Smith testified that when he first
saw the truck at Mitchell=s shop, he Anoticed
that on the passenger side of the tailgate that paint had been ground down by
what appeared to be an electric grinder . . . removing some decals from the
side of the vehicle.@ 
Bramlett also confirmed that the truck=s
decals, which identified his company and provided its phone numbers, had been
ground off.[13]

Appellant=s
communications with two of the witnesses who testified at trial demonstrated
consciousness of his guilt and further connected him to the theft scheme.  For instance, Carol Schott, who sold the real
property that appellant and Elmore jointly purchased (as evidenced by a real
estate contract that appellant signed in January 2005), testified that she
received a letter from appellant asking her to contact law enforcement and tell
them that he had not taken any part in purchasing the property.  Schott understood that this letter asked her
to lie for appellant.  Finally, Susan
Elmore (Scott's mother) testified that after Scott had been arrested for theft,
appellant called her and told her that if Scott would Atake the
fall@ for the
theft charges, appellant could Ahelp him
with money@ after he was released from
jail.








We hold that these facts, considered
cumulatively, sufficiently corroborated the accomplice testimony by tending to
connect appellant to the theft scheme; therefore, no egregious harm resulted
from the lack of an instruction about accomplice witness testimony.[14]  See Solomon, 49 S.W.3d at 361; Cathey,
992 S.W.2d at 462 (explaining that if Athe
combined weight of the non‑accomplice evidence tends to connect the defendant
to the offense, the requirement of Article 38.14 has been fulfilled@).  We therefore overrule appellant=s first
point.[15]

Ineffective Assistance of Counsel








In his second point, appellant argues that his
trial counsel gave him ineffective assistance by failing to request an
accomplice witness instruction.  To
establish ineffective assistance of counsel, appellant must show by a
preponderance of the evidence that his counsel=s
representation fell below the standard of prevailing professional norms and
that there is a reasonable probability that, but for counsel=s
deficiency, the result of the trial would have been different.  Strickland v. Washington, 466 U.S.
668, 687, 104 S. Ct. 2052, 2064 (1984); Salinas v. State, 163 S.W.3d
734, 740 (Tex. Crim. App. 2005); Mallett v. State, 65 S.W.3d 59, 62-63
(Tex. Crim. App. 2001); Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim.
App. 1999).

The second prong of Strickland requires a
showing that counsel=s errors were so serious that
they deprived the defendant of a fair and reliable trial.  Strickland, 466 U.S. at 687, 104 S.
Ct. at 2064.  In other words, appellant
must show there is a reasonable probability that, but for counsel=s
unprofessional errors, the result of the proceeding would have been
different.  Id. at 694, 104 S. Ct.
at 2068.  A reasonable probability is a
probability sufficient to undermine confidence in the outcome.  Id. 
The ultimate focus of our inquiry must be on the fundamental fairness of
the proceeding whose result is being challenged.  Id. at 697, 104 S. Ct. at 2070.








In this case, appellant=s
ineffective assistance claim is wholly predicated on his counsel=s
failure to request an accomplice witness instruction.  Even if we were to assume that appellant=s
counsel=s performance
was legally deficient,[16]
because we have concluded that, despite no instruction being given, the
accomplice testimony was sufficiently corroborated by other evidence that
tended to connect appellant to the theft scheme, appellant cannot demonstrate
that the result of his trial would have been different.  See Johnson v. State, 234 S.W.3d 43,
56 (Tex. App.CEl Paso 2007, no pet.)
(reasoning that because the Anon‑accomplice
evidence sufficiently corroborated the accomplice and tended to connect [the
defendant] to the offense . . ., the record [did] not establish a reasonable
probability that but for counsel=s error,
the result of the proceeding would have been different@); Casias
v. State, 36 S.W.3d 897, 902 (Tex. App.CAustin
2001, no pet.) (overruling an ineffective assistance argument because the
corroborating evidence was sufficient to tend to connect the defendant to the
crime).  Therefore, we overrule appellant=s second
point.








Conclusion

Having overruled both of appellant=s
points, we affirm the trial court=s
judgment.

TERRIE
LIVINGSTON

JUSTICE

 

 

PANEL:  CAYCE, C.J.; and LIVINGSTON, J.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  January 29, 2009











[1]See Tex. R. App. P. 47.4.





[2]Kiser filed a police
report, and more than a month later, he received a call that the travel trailer
had been found.  When Kiser identified
the trailer, he noticed that its siding had been torn and its electrical
connections had been severed.





[3]Eventually, Tory Vannatta
(another employee) received a call informing him that the trucks and some of
the other equipment had been recovered.





[4]Bramlett received a call
that the pickup truck had been found and went with members of the Hood County
Sheriff=s Department to identify
the truck.  He acknowledged that the
truck belonged to his business.





[5]The house trailer
appeared to be unlivable, and appellant seemed to have been remodeling it.





[6]Section 31.09 of the
penal code states that when Aamounts are obtained . . . pursuant to one scheme
or continuing course of conduct, whether from the same or several sources, the
conduct may be considered as one offense and the amounts aggregated in
determining the grade of the offense.@  Tex.
Penal Code Ann. ' 31.09 (Vernon
2003).





[7]Though theft of property
valued between $100,000 and $200,000 is a second degree felony, the enhancement
paragraph enabled the State to seek punishment for a first degree offense.  See Tex. Penal Code Ann. '' 12.42(b), 31.03(e)(6)
(Vernon Supp. 2008).  Appellant pled true
to the enhancement paragraph=s allegation, and evidence admitted at trial
further established that the allegation was true.





[8]Appellant testified that
he purchased the property with Elmore to store old cars which he had collected.





[9]Specifically, Elmore
testified that appellant bought three trailers and a four wheeler vehicle that
Elmore had stolen and that appellant knew that these items were stolen when he
bought them.





[10]At the time of appellant=s trial, Elmore was in
custody and was awaiting trial on the same charges as those contained in
appellant=s indictment.





[11]The record established
that another witness at appellant=s trial, Lisa Diane Atkins, may also have been
connected to the theft scheme.  Atkins, a
confessed thief of over two hundred cars, testified that she had previously
sold stolen property to appellant and that she had received drugs from
appellant in exchange for such property. 
Therefore, we will not consider the testimony of Atkins (or Elmore) in determining
whether sufficient corroborating testimony was presented.  See Solomon, 49 S.W.3d at 361.





[12]At oral argument,
appellant=s counsel argued that
Sullivan=s testimony regarding
appellant=s Agrinding@ on the truck was not
credible because Sullivan stated that he saw the incident at about 11:30
p.m.  However, we must view this evidence
in the light most favorable to the verdict, and we must defer to the jury=s resolution of the
witness=s
credibility.  See Simmons, 205 S.W.3d at 72B73; Clement v.
State, 248 S.W.3d 791, 797 (Tex. App.CFort Worth 2008, no pet.).





[13]The record indicates that
the truck may have been left at Mitchell=s shop because it was stuck in the mud.





[14]We note that appellant=s criminal intent in
purchasing the real property, riding on the Gator, grinding off the decals, and
making these communications may be properly inferred by supplementing Elmore=s testimony (which more
directly implicated appellant in the scheme). 
In a theft case, the actor's knowledge or intent may be established by
the uncorroborated testimony of an accomplice. 
Tex. Penal Code Ann. ' 31.03(c)(2); see Nethery v. State, 29
S.W.3d 178, 185B86 (Tex. App.CDallas 2000, pet. ref=d).





[15]Within the portion of
appellant=s brief related to his
first point, he included subheadings and a brief analysis regarding legal and
factual sufficiency.  However, because
this analysis seems to repeat the allegations appellant included regarding the
lack of corroborating evidence, and because the analysis contains no citation
to authorities, we will not address legal or factual sufficiency as independent
grounds for this appeal.  See
Dornbusch v. State, 262 S.W.3d 432, 438 n.3 (Tex. App.CFort Worth 2008, no
pet.).





[16]Courts have noted that
failure to request an accomplice witness instruction may render counsel=s performance
deficient.  See Ex parte Zepeda,
819 S.W.2d 874, 876B77 (Tex. Crim. App.
1991); Robinson v. State, 665 S.W.2d 826, 831 (Tex. App.CAustin 1984, pet. ref=d) (describing counsel=s failure to request an
accomplice witness instruction as a Aglaring error@).